No. 78,902

STATE OF KANSAS, *Appellee,* v. WILLIE SMITH, JANET JARRELL, DAVID GAULT, FREDERICK LOEB, and ADAM J. GAULT, *Appellants.*

(993 P.2d 1213)

Opinion filed December 10, 1999.

*J. Charles Droege*, of Overland Park, argued the cause for appellant Willie Smith; *Frank P. Gilman*, of Overland Park, argued the cause for appellant David Gault; *James C. Trickey*, of Overland Park, was with them on the brief for appellant Janet Jarrell; and *Jonathan Bortnick*, of Kansas City, Missouri, was with them on the brief for appellant Frederick Loeb.

*Mary Curtis*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant Adam J. Gault.

*Richard G. Guinn*, assistant district attorney, argued the cause, and *Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Five defendants tried in a consolidated trial appeal convictions of conspiracy to commit theft by deception, contrary to K.S.A. 21-3701(a)(2) and K.S.A. 21-3302. Defendants claim (1) the complaint was defective for charging a single conspiracy; (2) the district court erroneously failed to sever the trials of individual defendants; (3) there is insufficient evidence to sustain the convictions; (4) the district court erroneously failed to grant a mistrial; (5) cumulative errors require reversal of convictions; (6) the evi-

dence was insufficient to sustain the conviction for making a false writing; (7) the evidence was insufficient to sustain conviction of theft by deception; and (8) a minor tried as an adult claims (a) the trial court erred in denying his motion to grant him a separate trial; and (b) under the circumstances, the court lacked jurisdiction to try him as an adult.

The evidence was that five individuals entered into an agreement to obtain by deception insurance proceeds from various insurance companies over the course of approximately 15 months. The five individuals in varying combinations staged seven separate car collisions and one slip and fall accident to support the fraudulent insurance claims. The eight accidents involved various claims for property damage, wage loss, and medical expenses. In addition, several of the claims included compensation for pain and suffering. A majority of the automobile accidents occurred in parking lots and at slow speeds.

In a number of the auto accidents that formed the basis for the insurance claims, the defendants had applied for auto insurance coverage a few days prior to the accidents. The drivers of the other vehicles were usually backing from a parking space at the time of the alleged accidents. In all the automobile collisions, the only injured parties were the defendants—the occupants of other cars were never injured.

The individuals involved in the conspiracy included David Gault, a former insurance claims adjuster, and Dr. Frederick Loeb, a licensed and practicing chiropractor. In each of the accidents where medical expenses were claimed, Dr. Loeb reported medical expenses sufficient to meet the threshold amounts for the claimants to be eligible to be compensated for pain and suffering. Dr. Loeb was paid for providing chiropractic treatment to the claimants. Regarding the claimants' prior or similar injuries, Dr. Loeb failed to notify the insurance companies he had knowledge of the prior or similar injuries.

The other defendants were Willie Smith and Janet Jarrell, a married couple, who purported to be officers of Smith Industries of Wichita, a roofing company. In various wage loss claims, David

Gault and his minor son, Adam Gault, contended that they were employed as roofers by Smith Industries.

To provide evidence of wage loss, a checking account in the name of Smith Industries was opened at the Intrust Bank, Wichita, in April 1994. There was little activity in the account until June 13, 1994, when Janet was added as an authorized signer on the account along with Willie. On that same date, there was a deposit of $1,000 into the account. Two payroll checks were drawn on the account, one for David and one for Adam. Those payroll checks, which all but depleted the account, were used as proof of wages paid to support David's and Adam's wage loss claims over the 15 months.

During a claims investigation, insurance investigators attempted to verify the existence of Smith Industries. The company address was the residence where Willie and Janet lived with their family. The investigators found no Uniform Commercial Code filings, real estate records, mortgage records, tax records, or licensing records to support the existence of an active Smith Industries. The telephone listing for Smith Industries provided a telephone number without an address. When contacted by insurance investigators to obtain the names of contacts or jobs completed by Smith Industries, Willie Smith refused to provide the requested information.

In separate complaints the State charged each of the defendants with conspiracy to commit theft by deception by staging accidents and making false claims for compensation. The State's complaint charged one conspiracy and alleged 12 overt acts by the various defendants in furtherance of the conspiracy. The conspiracy was alleged to have terminated with the final overt act alleged in the complaint. In addition, David Gault was charged with making a false writing in violation of K.S.A. 21-3711.

Prior to trial, the defendants filed motions to dismiss the complaints, contending that the complaint was defective by charging a continuing single offense of conspiracy to commit theft by deception rather than a series of separate conspiracies and was thereby duplicitous and in violation of the Sixth Amendment. In addition, the defendants asserted the complaint was defective because it charged the general crime of theft by deception rather than the specific crime of a fraudulent insurance act, pursuant to K.S.A. 40-

2,118. All the defendants' pretrial motions were denied. The cases were consolidated for a jury trial.

On October 10, 1996, each defendant was convicted of the crimes charged. Smith received a 7-month prison sentence, and the remaining defendants received probation sentences of 24 months. David was also sentenced to 24 months' probation on the false writing conviction, to be served consecutive to the conspiracy sentence. All defendants appealed.

## COMPLAINT
### Conspiracy as a Continuing Offense

The State's complaint alleged that from the 16th of September 1993 through December 1994, Willie, David, Janet, Adam, and Frederick entered into an agreement to commit theft from various insurance companies by staging a series of accidents and making claims against the companies for damages. The complaint claimed that the defendants committed 12 separate acts in furtherance of the conspiracy.

The defendants objected in pretrial motions and at trial, contending that the complaint was jurisdictionally defective for alleging separate acts of theft and charging a single conspiracy. Defendants asserted that each accident and the resulting insurance claims constituted separate crimes of theft by deception, and the statutory crime of theft by deception is not a continuing crime. The defendants also argue that by charging the crime as a continuing offense and trying all the defendants to one jury, they were prejudiced because consolidating the trials allowed the State to present evidence not relevant to each of the defendants and to introduce evidence of acts of other defendants not relevant to all defendants under the coconspirator exception to the hearsay rule. K.S.A. 60-460(i).

The sufficiency of the charging document is measured by whether it contains the elements of the offense intended to be charged, sufficiently apprises the defendant of what he or she must be prepared to meet, and is specific enough to make a subsequent plea of double jeopardy possible. The charging document is sufficient if it substantially follows the language of the statute or charges

the offense in equivalent words or words of the same import. K.S.A. 22-3201; *State v. Micheaux*, 242 Kan. 192, 197, 747 P.2d 784 (1987).

We note that all criminal offenses, except those considered continuing offenses, are committed when every act which is an element of the offense has occurred. Continuing offenses are committed when the course of the prohibited conduct, or the accused's complicity in the crime, has terminated. *State v. Gainer*, 227 Kan. 670, Syl. ¶ 1, 608 P.2d 968 (1980).

The defendants erroneously rely on *Gainer* to support their argument that the complaint is defective for alleging the offense was a continuing crime. *Gainer* involved the question of whether concealing the property taken in a theft constitutes concealment, thus tolling the statute of limitations.

The *Gainer* court observed that the continuing offense doctrine arises in statute of limitations questions and has only limited application therein. The *Gainer* court held that the crime of theft by obtaining or exerting unauthorized control over property with intent to deprive the owner permanently of the possession, use, or benefit of his or her property as proscribed in K.S.A. 21-3701(a) was not a continuing offense. 227 Kan. 670, Syl. ¶ 2; see *State v. Martinez*, 255 Kan. 464, 472, 874 P.2d 617 (1994); *State v. Freitag*, 247 Kan. 499, 502, 802 P.2d 502 (1990). Here the defendants are not raising a statute of limitations claim, therefore, the continuing offense doctrine as discussed in *Gainer* has no application.

The defendants next contend that the complaint was jurisdictionally defective because each accident and the resulting fraudulent insurance claims constituted separate crimes, and under these circumstances, the State must charge separate acts of thefts. This contention fails to recognize that the State did not charge the crime of theft. Rather than charging separate conspiracies or acts of theft, the State charged the crime of conspiracy to commit theft and alleged separate acts of deception that comprised the conspiracy.

We note that conspiracy as defined by K.S.A. 21-3302 consists of two essential elements: (1) an agreement between two or more persons to commit or assist in committing a crime and (2) the commission by one or more of the conspirators of an overt act in furtherance of the object of the conspiracy. *State v. Hill*, 252 Kan.

637, 641, 847 P.2d 1267 (1993). To prove the defendants entered into a conspiracy, the State must establish that the conspirators had a mutual understanding or tacit agreement—a meeting of the minds—or the accomplishment of a common purpose. This meeting of the minds may be expressed or implied from the acts of the parties. 252 Kan. at 641. Under such circumstances, the agreement is the prohibited conspiracy, and however diverse its objects, it violates but a single statute. *State v. Mincey*, 265 Kan. 257, 268, 963 P.2d 403 (1998).

In *Mincey* this court addressed the question of whether Mincey's convictions for both conspiracy to commit first-degree murder and conspiracy to commit aggravated robbery were multiplicitous. The *Mincey* court determined that a single continuing conspiracy cannot be broken down into component sub-agreements for the purpose of multiple punishments or multiple prosecutions. Where separate conspiracies are alleged and both are founded on a general conspiracy statute, the relevant inquiry is whether there existed more than one agreement to perform an illegal act or acts. 265 Kan. at 268. The *Mincey* court found that the convictions for the two conspiracies arose from a single agreement to commit two distinct crimes. The conviction for conspiracy to commit aggravated robbery was reversed.

Even more recently, this court in *State v. Wilkins*, 267 Kan. 355, 985 P.2d 690 (1999), reversed a conviction of conspiracy to commit aggravated robbery. In *Wilkins*, there was one agreement between Wilkins and another to murder the victim and take his necklace as proof of the killing. The killing of the victim formed the basis for a first-degree murder charge, and the taking of the necklace was the basis for an aggravated robbery charge. Wilkins was convicted of conspiracy to commit murder and a separate conspiracy to commit aggravated robbery. Wilkins appealed, claiming there was a single conspiracy. The *Wilkins* court agreed and held that the single conspiracy could not be broken down into component sub-agreements for the purpose of multiple prosecutions or punishments. 267 Kan. 355, Syl. ¶ 6.

The State's theory was that the different crimes of theft committed by the defendants were the result of an agreement to com-

mit a series of crimes to obtain money by deception. Although the acts alleged in the complaint involved multiple transactions and deceptions by the various defendants spanning a period of time and overlapping facts, there was only one agreement between the defendants to cooperate in fraudulently collecting insurance claims. For instance, each accident involved one or more of a core group of conspirators and some of the successful claims included a false statement for medical treatment provided by Dr. Loeb and/or wage losses verified by Smith Industries.

The evidence was sufficient for the jury to conclude that the medical treatment and wage loss claims were central to the agreement and that the individual defendants conspired to play their parts in pursuing such claims. The complaint is consistent with the State's theory, and the complaint is not defective for failing to charge individual theft crimes in addition to or instead of the crime of conspiracy to commit theft by deception.

## Duplicity

At the instructions conference, the defendants objected to the instruction stating the elements of conspiracy to commit theft. The defendants' objection was a restatement of their arguments regarding the deficiency of the complaint. The defendants also contend that the complaint was duplicitous, allowing the jury to convict the defendants without a unanimous agreement to any of the separate offenses alleged. For instance, the attorney for Dr. Loeb asserted the instruction "is confusing with respect to my client on exactly what [in the complaint] he is accused of doing that constitutes the stealing by deceit."

We note that duplicity is the joining in a single count of a complaint of two or more distinct and separate offenses. Duplicitous charging confuses the defendant as to how he or she must prepare a defense and confuses the jury. *State v. Anthony*, 257 Kan. 1003, Syl. ¶ 9, 898 P.2d 1109 (1995).

The defendants mischaracterize the issue as duplicity. The defendants' issue is more appropriately characterized as an objection to the jury instructions and verdict form for failing to state a una-

nimity requirement as to the specific act or acts the jury relied upon to convict the defendants of conspiracy.

Here, the State did not charge more than one offense in a single count; rather, the complaint and the jury instructions stated that the defendants may be found guilty of a conspiracy if the jury found that the defendants intentionally entered into an agreement to commit theft by deception and then alleged several acts in furtherance of that agreement were committed. The jury instructions further informed the jury that proof of only one of the alleged acts was sufficient for a conviction. There was no specific unanimity instruction as to which act the jury relied upon for the conviction; however, the instructions did provide a general unanimity requirement that the jury's agreement upon the verdict must be unanimous.

In multiple acts cases, where several acts are alleged and any one of them could constitute the crime charged, the jury must be unanimous as to which act or acts constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of the jurors must agree that the same underlying criminal act has been proved without a reasonable doubt. *State v. Carr*, 265 Kan. 608, 618, 963 P.2d 421 (1998) (quoting *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 [1994]).

Although K.S.A. 22-3421 requires a unanimous verdict, it is sufficient for the jury to find only one of the alleged overt acts in furtherance of the conspiracy to convict each defendant. Where, as in this case, the jury is given a list of acts from which to find proof of one act, a danger could exist that the jury was not unanimous as to the act or acts it relied upon for the conviction. We noted that the jurors were polled by the district judge after rendering their verdict. Each juror affirmed the verdict of guilty as to the alleged acts in furtherance of the conspiracy to commit theft. Therefore, we find no error.

## Specific Statute

The defendants next assert that the complaint was defective be-

cause the State charged the general crime of theft by deception rather than the specific crime of commission of a fraudulent insurance act, pursuant to K.S.A. 1998 Supp. 40-2,118. The State first argues that this court should refuse to consider the issue because the defendants failed to raise the issue to the trial court.

In *Carmichael v. State*, 255 Kan. 10, 872 P.2d 240 (1994), the defendants raised, for the first time on appeal, a challenge to his rape convictions by asserting the more specific offense of aggravated incest should have been charged. The *Carmichael* court noted that a sentence which does not conform to the statutory provisions, either in character or the term of punishment authorized, is an illegal sentence and evaluated the issue, despite the fact that it had not been raised in the district court. 255 Kan. at 16.

The defendants' argument here is that *conspiracy* to commit theft by deception is the general crime and *conspiracy* to commit a fraudulent insurance act is a more specific crime that is alleged to have occurred. Usually, when there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling. *State v. Fritz*, 261 Kan. 294, Syl. ¶ 1, 933 P.2d 126 (1997).

In *Carmichael*, the question was whether, when a defendant is related to the victim of a sex crime, aggravated incest, a specific crime, should be charged rather than rape, a general crime. The *Carmichael* court found that even though the crimes of aggravated incest and rape contain different elements, when the prohibited relationship exists, aggravated incest is the specific offense and must be charged, rather than the general offense of rape.

The rule that a more specific statute should prevail over the general statute is merely a rule of interpretation which is used to determine which statute the legislature intended to be applied in a particular case. *State v. Hill*, 16 Kan. App. 2d 280, Syl. ¶ 1, 823 P.2d 201 (1991), *rev. denied* 250 Kan. 806 (1992). As pertinent to this case, a fraudulent insurance act, defined by K.S.A. 1998 Supp. 40-2,118(a), is an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares

with knowledge or belief that it will be presented to or by an insurer, any written statement or claim for payment containing any materially false information. Theft by deception is obtaining by deception control over the property of another. K.S.A. 21-3701(a)(2).

The State asserts that we are not required to answer the question because it was precluded from charging a fraudulent insurance act due to the fact that K.S.A. 1994 Supp. 40-2,118 was not effective until July 1, 1994, and the acts alleged in the conspiracy, specifically, all written claims presented to insurance companies, occurred prior to the effective date of the statute. The State argues that under these circumstances, charging a fraudulent act would have resulted in an ex post facto violation.

An ex post facto violation occurs when a new law is retroactively applied to events that occurred before its enactment and the new law disadvantages the offender affected by it. *State v. LaMunyon*, 259 Kan. 54, 65, 911 P.2d 151 (1996). All criminal offenses, except those considered continuing offenses, are committed when every act which is an element of the offense has occurred. *State v. Cox*, 258 Kan. 557, 579-80, 908 P.2d 603 (1995).

The State is correct in its assertion that it was precluded from charging conspiracy to commit a fraudulent insurance act because to prove the crime, it would have had to prove that the defendants submitted the written claims to the insurance companies prior to the effective date of the statute. In this case, even though the final overt act alleged in the complaint occurred after the effective date of the statute, all written claims presented to insurance companies occurred prior to the effective date of the statute. Therefore, the State was precluded from charging conspiracy to commit a fraudulent insurance act.

## FAILURE TO SEVER TRIALS

Each defendant was originally charged in a separate complaint. The cases were later consolidated for trial. Prior to trial, each of the defendants moved to sever their case for trial. Each defendant argued that his or her ability to call the other defendants as witnesses was frustrated by the right of the codefendants to refuse to

testify as a witness; therefore, they did not receive a fair trial in a consolidated trial. The district judge noted that the defendants had not advanced antagonistic defenses and observed that any potential prejudice caused by consolidation would be cured by an appropriate limiting instruction. Based on this reasoning, the district judge found that the defendants had failed to make an adequate showing for severance and denied the motion for severance.

It is permissible for several defendants to be joined together in one trial, when charged in separate complaints, if:

" '(1) when each of the defendants is charged with accountability for each offense included, or (2) when each of the defendants is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy, or (3) when in the absence of a conspiracy it is alleged the several offenses charged were part of a common scheme or were so closely connected in time, place and occasion that proof of one charge would require proof of the others.' " *State v. Aikins*, 261 Kan. 346, 359, 932 P.2d 408 (1997) (quoting *State v. Tate*, 228 Kan. 752, 754, 620 P.2d 326 [1980]).

The determination of whether defendants charged separately may be tried together is in the trial court's discretion. Therefore, the trial court's decision is reviewed by an abuse of discretion standard. 261 Kan. at 359.

Each defendant was charged with a single conspiracy, *i.e.*, an agreement by each defendant to commit theft by deception by staging accidents and making false claims against insurance companies for compensation. Under such circumstances, the defendants could originally have been charged in a single complaint; therefore, the requirements for joinder were satisfied.

Even if the requirements of joinder are satisfied, the court cannot join the defendants for trial if the defendants are prejudiced by the joinder. Although a single trial may be desirable from the standpoint of economical and efficient criminal procedure, the right of a defendant to a fair trial must be the overriding consideration. 261 Kan. at 360. The usual grounds to show prejudice to a fair trial so that severance will be granted are:

" '(1) the defendants have antagonistic defenses; (2) important evidence in favor of one of the defendants which would be admissible in a separate trial would not be allowed in a joint trial; (3) evidence incompetent as to one defendant and

introducible against another would work prejudicially to the former with the jury; (4) a confession by one defendant, if introduced and proved, would be calculated to prejudice the jury against the others; and (5) one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and compellable witness on the separate trials of such other defendants." ' 261 Kan. at 360 (quoting *State v. Pham*, 234 Kan. 649, Syl. ¶ 2, 675 P.2d 848 [1984]).

The defendants argue that they were prejudiced by the joinder. They identify specific evidence that they were precluded from offering by joinder:

1. Dr. Loeb could have been called by the other defendants regarding his diagnosis and treatment of their injuries as well as the customary charges for treatment of the injuries.

2. Dr. Loeb could have offered expert testimony to establish the causal link between the accidents and the injuries sustained by the defendants arising from the accidents.

3. In a separate trial, each of the other defendants could have been called to testify as to the facts of each accident, the damages, and injuries sustained, and to rebut and/or resolve conflicts in the testimony of witnesses called by the State.

4. Dr. Loeb could have called the other defendants to testify that he did provide treatment for actual injuries.

5. Defendants associated with Smith Industries could have been called by other defendants to testify that Smith Industries was a roofing subcontractor that employed and paid Willie Smith, Charles Smith, Janet Jarrell, David Gault and Adam Gault.

6. The other defendants would have testified there was no agreement to stage accidents and/or submit fraudulent insurance claims.

At the conclusion of trial, the defendants proffered to the trial judge that, had the case been severed, they would have been able to offer the stated evidence in their defense. In addition, the defendants point out that no health care expert testified that the defendants were not actually injured in the accident or that the defendants had exaggerated their injuries, and, in most of the accidents, the insurance companies had investigated the facts of

the accidents, found that defendants were not at fault, had been injured, and approved compensation paid the defendants.

First, we note that the Fifth Amendment privilege " 'can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory [citation omitted], and it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used.' " *State v. Lekas*, 201 Kan. 579, 589, 442 P.2d 11 (1968) (quoting *Murphy v. Waterfront Comm'n.*, 378 U.S. 52, 94, 12 L. Ed. 2d 678, 84 S. Ct. 1594 [1964], [White, J., concurring]). The Fifth Amendment privilege against self-incrimination extends until there is a final judgment in a case and a right to appeal has expired. See *State v. Aldape*, 14 Kan. App. 2d 521, 526, 794 P.2d 672, *rev. denied* 247 Kan. 705 (1990).

Therefore, each defendant retained his or her right not to testify as a witness even if separately tried. Separate trials would not have insured that the proffered evidence would be available to any defendant.

The defendants further assert that evidence of prior bad acts, admitted pursuant to K.S.A. 60-455 against some defendants, prejudiced the other defendants. The defendants fail to acknowledge that the court gave the jury a limiting instruction prior to the admission of the evidence implicating other defendants. The instruction specifically stated that the evidence was admissible as to the named defendant only. Absent any contrary evidence, it must be assumed that the jury followed this instruction, thus minimizing prejudice to the other defendants. See *State v. Lane*, 262 Kan. 373, 391, 940 P.2d 422 (1997).

## SUFFICIENCY OF EVIDENCE

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

## Injuries

The defendants contend that the evidence is insufficient to sustain their convictions because the State presented no evidence that the claims made for personal injury and medical treatment were not claims made for actual injuries.

The defendants fail to recognize that the State was not required to prove that the injuries sustained by the defendants were not actual injuries. The State was required to prove the elements of conspiracy to commit theft by deception. The elements of the crime are limited to proof of an agreement to commit the crime of theft by deception and an overt act in furtherance of the agreement. See K.S.A. 21-3302. It is immaterial whether the defendants were injured or unharmed.

## Staged Accidents

The defendants next claim that the evidence was insufficient because the State presented no evidence that the accidents were staged. We acknowledge that the evidence supporting the conclusion that the accidents were staged was largely circumstantial. But, a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Smith*, 245 Kan. 381, 393, 781 P.2d 666 (1989).

The circumstantial evidence supporting the conviction included (1) the defendants created a company to support their claims for lost wages and the company could not be verified by investigators; (2) many of the accidents occurred shortly after applying for automobile insurance policies where prior claims and accidents were not disclosed by the defendants on the applications for insurance; (3) there were numerous accidents involving the same individuals and others who had expertise and experience to carry out the conspiracy, and (4) Dr. Loeb failed to disclose on the medical claim forms submitted to the insurance companies that he had treated the person claiming an injury previously for the same or similar injuries. This evidence was sufficient to find that the accidents were staged so the defendants could fraudulently claim insurance proceeds.

## ADMISSION OF BUSINESS RECORDS

The defendants complain certain business records were admitted without a proper foundation at trial. The defendants argue that if business records are excluded, the evidence was insufficient to sustain the conviction.

The business records are Intrust Bank records indicating that an account was established in the name of Smith Industries and monthly statements of that account. In addition, there are Shelter Insurance records which include David Gault's application for benefits, Dr. Loeb's treatment records of David and Adam Gault, and calendars indicating the dates and amounts of insurance payouts. Timely and specific objections to the admission of these records were made at trial.

K.S.A. 60-460(m) defines the business records exempted from the hearsay rule as:

"Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that (1) they were made in the regular course of a business at or about the time of the act, condition or event recorded and (2) the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness."

K.S.A. 60-460(m) provides that the trial court determines whether the source of information, method, and time of preparation reflect trustworthiness. *State v. Beasley*, 205 Kan. 253, 257, 469 P.2d 453 (1970), *cert. denied* 401 U.S. 919, 27 L. Ed. 2d 821, 91 S. Ct. 903, (1971). The determination of the presence of factors concerning admissibility of business records is within the trial court's discretion. See *Schraft v. Leis*, 236 Kan. 28, 43, 686 P.2d 865 (1984).

### Intrust Bank Records

The defendants contend that the bank records were admitted without proper foundation because the witness who testified as to the records was not the custodian of the records, did not produce the actual bank records, and used a facsimile of the records when testifying.

It is true that using copies of documents in some instances violates the hearsay rule and the best evidence rule. However, there are exceptions to the rule which allow copies of documents to be entered into evidence. K.S.A. 60-467 provides that business records shall not be excluded as evidence because they are copies rather than originals.

The bank records were offered through the testimony of the Assistant Vice President of the Intrust Bank, the person in charge of loans and retail operations. She testified that she was familiar with the record keeping process of the bank. She had obtained from the bank and brought to court the business account documentation for Smith Industries. The bank officer had reviewed the account, its activity and history prior to testifying in court. She testified that these documents were consistent with the actual bank records.

K.S.A. 60-460(m) does not require that the custodian of business records lay the foundation facts for the admission of the records into evidence. The foundation facts may be proved by any relevant evidence, and the person making the entries in the records need not be called to authenticate them if the records can be identified by someone else who is qualified by knowledge of the facts. *State v. Cremer*, 234 Kan. 594, 601, 676 P.2d 59 (1984). The district court did not abuse its discretion in admitting the facsimile of a nonparty's records.

### Shelter Insurance Records

The Shelter Insurance records included records of chiropractic treatment of David and Adam submitted by Dr. Loeb to Shelter Insurance in support of David's and Adam's insurance claims, David's and Adam's applications for PIP benefits, wage verification forms, and two calendars which summarized the insurance payout dates and amounts.

The Shelter Insurance investigator testified that the two calendars summarizing the dates and amounts of insurance payouts were not prepared in the ordinary course of business at Shelter Insurance. K.S.A. 60-460(m) provides that the judge must find that business records admitted as evidence must have been made in the

regular course of business. Clearly, the calendars do not meet this criterion; therefore, the calendars were erroneously admitted as business records. Although the calendars were improperly admitted, under the circumstances, the error was harmless.

The defendants also objected to admission of copies of Shelter Insurance business records. As previously noted, K.S.A. 60-467, the best evidence rule, provides that copies of business records shall not be excluded as evidence where copies of the records are provided by the witness in response to a subpoena duces tecum and originals were not specifically requested. However, as to the insurance company's records admitted, the Shelter Insurance investigator testified that the insurance records were from the file of the district attorney, and he had not been requested to bring records to court.

Although the records were provided by Shelter Insurance to the district attorney pursuant to a subpoena duces tecum, the exception to the best evidence rule does apply, and the copies of the records were properly admitted.

## PROSECUTORIAL MISCONDUCT

During the investigation of one of the accidents, the investigating officer noted that the tire marks at the scene of the accident indicated that Willie Smith had not attempted to avoid the accident. In closing argument, the assistant district attorney commented on Willie's failure to explain to the police why he failed to take evasive action to avoid the accident, stating:

"Ladies and gentlemen, common knowledge and experience is a big part of this case. Common knowledge and experience tells you that, when you are heading towards a vehicle, you are trying your darndest to veer away from hitting it. And the tires in that February 3rd collision are pointing straight ahead.

"There is no good explanation for that. If there was a good explanation, Willie Smith certainly would have given it and provided it to the police officers that day."

The defendants objected and moved for a mistrial. The trial court admonished the jury that the assistant district attorney's comment was not to be considered as a comment on the failure of Willie Smith to testify at trial. The court then informed the jury that the

assistant district attorney was referring to Willie Smith's failure to make statements to a police officer at the scene of the accidents.

The Fifth Amendment to the United States Constitution forbids comment by the prosecution on the accused's silence or instructions from the court that such silence is evidence of guilt. *State v. Davis*, 255 Kan. 357, 361, 874 P.2d 1156 (1994). The prohibition is codified in Kansas in K.S.A. 60-439, which provides:

> "If a privilege is exercised not to testify or to prevent another from testifying, either in the action or with respect to particular matters, or to refuse to disclose or to prevent another from disclosing any matter, the judge and counsel may not comment thereon, no presumption shall arise with respect to the exercise of the privilege, and the trier of fact may not draw any adverse inference therefrom. In those jury cases wherein the right to exercise a privilege, as herein provided, may be misunderstood and unfavorable inferences drawn by the trier of the fact, or may be impaired in the particular case, the court, at the request of the party exercising the privilege, may instruct the jury in support of such privilege."

The defendants contend that they are entitled to a new trial because the prosecution improperly commented on Willie Smith's failure to testify or present evidence. The State argues that the assistant district attorney's comment to the jury did not touch on Willie's failure to testify at trial.

In *State v. Ninci*, 262 Kan. 21, 47-48, 936 P.2d 1364 (1997), a similar claim was made when the prosecutor in closing argument commented on the defendant's failure to explain his actions in a taped interview with the police.

Defense counsel objected and moved for a mistrial claiming the prosecutor's comment was an improper reference to Ninci's decision to not take the stand and testify. The State asserted that the comment was not improper because it referred only to Ninci's videotaped statement that had been shown to the jury. The trial judge agreed and denied the motion. On appeal, the *Ninci* court considered the prosecutor's statement in context and found it was obvious that the prosecutor's closing argument was a dissection of Ninci's videotaped statement and found no error in the prosecutor's closing statement.

The comments made here are remarkably similar to the prosecutor's comments in *Ninci*. The prosecutor clearly requested the

jury to consider the fact that Willie Smith failed to explain his lack of defensive driving to the officer investigating the accident. It was not a comment on Willie's failure to testify.

## CUMULATIVE ERROR

The defendants claim that cumulative errors committed at trial require reversal of their convictions of conspiracy to commit theft by deception. Cumulative trial errors, when considered collectively, may be so great as to require reversal of a defendant's conviction.

The test to determine cumulative error is whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant. *State v. Allison*, 259 Kan. 25, 37-38, 910 P.2d 817 (1996). After reviewing the record, we can conclude that the evidence against the defendants is overwhelming.

## CONVICTION FOR MAKING A FALSE WRITING

David Gault's conviction for making a false writing was based on David's failure to disclose that he had been involved in several previous accidents when he applied for auto insurance with Shelter Insurance. Making a false writing is making or drawing or causing to be made or drawn any written instrument or entry in a book of account with knowledge that such writing falsely states or represents some material matter or is not what it purports to be, and with intent to defraud or induce official action. K.S.A. 21-3711.

David contends that the evidence is insufficient to sustain his conviction because if Shelter Insurance had considered the omission "material," it would have canceled his insurance. We note that Shelter stated it canceled the policy because David had failed to report the February 1994 accident in his application. We also note that in addition to the February 1994 accident, David failed to disclose on his application for insurance that he had been involved in car accidents on September 16, 1993, and on May 9, 1994.

When Herbert Nease of Shelter Insurance was asked during the trial whether he would have written insurance coverage for David

if he had been aware of the undisclosed accidents, Nease replied, "no way." This is evidence that the nondisclosure was material information.

## APPEAL OF DEFENDANT ADAM GAULT

Adam Gault claims that the evidence is not sufficient to sustain his conviction for conspiracy to commit theft by deception. At the time the accidents were staged, Adam was 15 years old and living with his father, David. In the three automobile collisions in which Adam was involved, he was a passenger in the backseat of an automobile driven by his father or by Willie Smith. In each collision, Adam received medical treatment for injuries and obtained damages and compensation for alleged injuries.

A conspiracy to commit a crime is not established by mere association or knowledge of acts of the other parties. There must be some intentional participation in the conspiracy with a view to the furtherance of the common design and purpose. *Hill*, 252 Kan. at 641.

We note that to prove a conspiracy, the State must establish that the conspirators had a meeting of the minds for the accomplishment of the common purpose. The evidence is sufficient to prove that Adam Gault intentionally participated in the conspiracy with a view to the furtherance of the common design and purpose.

### Motion to Sever

The significant difference between the arguments made by the other defendants and Adam's argument is that Adam contends that the trial court abused its discretion in failing to sever his case from the other defendants because he had an antagonistic defense. Specifically, Adam argues that his trial should have been severed from his father's trial because his defense was that, as a minor in his father's sole custody, he merely followed the directions of his father without any knowledge of the conspiracy. In other words, his defense would be to implicate his father. The standard for reviewing the trial court's failure to sever a trial has been previously stated.

Adam did not make this argument to the trial court. Instead, Adam argued to the trial court that his case should be severed

because his alleged involvement in the conspiracy was relatively minor compared with the other defendants and the bulk of evidence which would be presented at trial regarding the actions of the other defendants would prejudice him.

An issue not presented to the trial court will not be considered for the first time on appeal. *State v. Gardner*, 264 Kan. 95, 106, 955 P.2d 1199 (1998). Because Adam did not give the trial court an opportunity to consider the effect of antagonistic defenses, the theory is not properly before this court.

## Jurisdiction to Try as an Adult

Adam was originally charged in two cases as a juvenile. One case charged misdemeanor theft and the other, the case which ultimately resulted in this appeal, charged conspiracy to commit theft by deception. Originally, the conspiracy count alleged 14 separate overt acts, 13 of which occurred while Adam was 15 years old and one which occurred approximately 4 months after Adam's 16th birthday.

The State's waiver motion requested that the judge waive juvenile jurisdiction because:

"1) Said Respondent was sixteen (16) years of age or older at the time of the alleged commission of the offenses charged in the Complaint filed herein.

"2) Said Respondent is not a fit and proper subject to be dealt with under the Juvenile Code of the State of Kansas."

On October 2, 1995, the judge heard the motion. Adam's father did not appear. The State informed the judge that the minor, Adam, had agreed to be tried as an adult. In return for Adam's waiver of juvenile jurisdiction, the State had agreed to not pursue a separate misdemeanor theft charge.

Adam's counsel stated to the judge that he had consulted with Adam regarding the status of the two cases. Counsel stated that he believed Adam understood fully the significance and effect of his decision to stipulate to the State's motion for waiver.

The judge asked Adam if he had had ample opportunity to review the stipulation with his attorney. Adam responded affirmatively and stated that he wanted to proceed without the presence

of his father. The judge explained to Adam that he (Adam) had a right to a hearing on whether to be adjudicated as a juvenile or tried as an adult. Adam acknowledged that he understood this right. The judge then asked Adam if it was his desire to voluntarily waive his right to have the hearing and stipulate to the fact that he was not amenable to the juvenile code? Adam answered, "Yes."

The judge then inquired into the facts of the misdemeanor theft charge which would be dismissed for Adam's waiver. In response to the judge's inquiry, Adam stated that the misdemeanor theft occurred when he and his father took his car into Western Auto for brake work. Adam left the store while his father was still in the store, expecting his father would pay for the brake work. His father did not. The judge approved the waiver.

Adam now contends that even though he requested to be tried as an adult the judge improperly waived jurisdiction by failing to consider the statutory factors enumerated in K.S.A. 38-1636(e). In support of this argument Adam cites K.S.A. 38-1681, which provides, in part: "Unless the respondent has consented to the order, an appeal may be taken by a respondent from an order authorizing prosecution as an adult," the State contends that the order is not appealable because Adam consented to the order. While K.S.A. 38-1681 precludes an appeal of an order waiving juvenile status when the respondent has consented to the waiver, it does not preclude an appeal if the judge failed to follow the statutory requirements for the waiver.

The Kansas Juvenile Offenders Code is an exclusive procedure. Failure of the State to proceed in accordance with the code is subject to judicial review. K.S.A. 38-1636(e) states eight factors the judge is to consider in determining whether prosecution as an adult should be authorized. The judge is not required to give equal weight to the factors listed in K.S.A. 38-1636(e). *State v. Valdez*, 266 Kan. 774, Syl. ¶ 2, 977 P.2d 242 (1999). The insufficiency of evidence pertaining to any one or more of the factors, in and of itself, is not determinative of the issue. K.S.A. 38-1636(e).

The standard for evaluating the certification of a juvenile to be tried as an adult was proper is whether the decision as a whole is supported by substantial competent evidence. It is not error for a

judge to give greater weight to some factors than it gives to others when evaluating the waiver.

In *State v. Randolph*, 19 Kan. App. 2d 730, 876 P.2d 177, *rev. denied* 255 Kan. 1006 (1994), the judge at the hearing to determine the minor's waiver of juvenile jurisdiction carefully and meticulously probed Randolph's understanding of his rights as a juvenile and then carefully explained to Randolph the legal safeguards that exist for his protection. Randolph maintained to the judge that he wanted to be treated as an adult. Randolph stipulated to allegations in the State's motion to waive juvenile court jurisdiction.

On appeal, Randolph contended that the judge should not have permitted him to consent or stipulate to the waiver of juvenile jurisdiction. He argued that the authority to determine whether a juvenile is to be tried as an adult resides exclusively with the judge, and the judge abdicated that responsibility by allowing his stipulation.

The Kansas Court of Appeals found that although a juvenile can stipulate to allegations made against him in a motion to waive juvenile jurisdiction, the judge in making the decision to waive jurisdiction must take into account the juvenile's stipulation and, in addition, evidence concerning the eight factors in K.S.A. 38-1636(e). 19 Kan. App. 2d at 738. The *Randolph* court reviewed the transcript of the hearing and noted that the allegations made by the State at the hearing included a compilation of the eight factors for the judge to consider when ruling on the motion. In addition, the judge based the waiver of jurisdiction upon a proffer of such evidence, Randolph's stipulation, and the statutory factors. The *Randolph* court concluded that the judge had properly waived jurisdiction. 19 Kan. App. 2d at 738-39.

Here, the State's motion was a conclusory statement that Adam was not a fit and proper subject to be dealt with under the juvenile code and failed to specifically address the K.S.A. 38-1636(e) factors; no other evidence was offered at the hearing. In addition, the transcript of the hearing reveals that the judge misunderstood the crime charged and may have made the decision based on an erroneous belief that rather than a single charge of conspiracy, there were 14 crimes charged. The judge stated:

"THE COURT: Do you understand there are 14 felony counts, conspiracy to commit theft?

"THE RESPONDENT: I'm charged with 14 counts?

"THE COURT: Fourteen counts. Do you understand that?

"THE RESPONDENT: Basically I've been charged with 14 felonies.

"THE COURT: Do you understand that's what's set out here?

"THE RESPONDENT: Yes. Yeah, I've seen it."

"THE COURT: Do you have any questions about that at all?

"THE RESPONDENT: No.

"THE COURT: Mr. Willard sat down and showed you the chart that had to do with the sentencing guidelines?

"THE RESPONDENT: It said five to seven months at Hutchinson or two years adult probation. That was —

"THE COURT: For each one, right?

"THE RESPONDENT: Yeah."

Although the charge of conspiracy to commit theft by deception was a single count, with 14 allegations of overt acts, the judge was under a misapprehension that there were 14 alleged offenses unadjudicated and pending against the minor.

Although a juvenile can stipulate to allegations made against him in a motion to waive juvenile jurisdiction, the judge, in making the decision to waive jurisdiction, must take into account the juvenile's stipulation and evidence concerning the eight factors in K.S.A. 38-1636(e). The judge failed to consider the K.S.A. 38-1636(e) factors. Therefore, the waiver of Adam Gault to adult status is not supported by substantial competent evidence, and the waiver order is reversed.

K.S.A. 38-1681(a)(2), provides that, if on appeal, the order authorizing prosecution as an adult is reversed but the finding of guilty is affirmed, the respondent shall be deemed adjudicated to be a juvenile offender. Since we have affirmed Adam's conviction, as required by statute, the matter of Adam Gault is remanded for further proceedings under the juvenile code.

Affirmed in part and reversed in part. The matter of Adam Gault is remanded for further proceedings pursuant to K.S.A. 38-1681(a)(2).