(191 P.3d 350)

No. 96,192

STATE OF KANSAS, *Appellee,* v. MELVIN D. BRYANT, JR., *Appellant.*

Opinion filed September 5, 2008.

*Lydia Krebs,* of Kansas Appellate Defender Office, for appellant.

*Scott M. Schultz,* special assistant attorney general, and *Paul J. Morrison,* attorney general, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

CAPLINGER, J.: Melvin D. Bryant, Jr., appeals his conviction and sentence for securities fraud in violation of K.S.A. 1998 Supp. 17-1253. Bryant argues (1) his right to a statutory right to a speedy trial was violated; (2) the trial court abused its discretion in admit-

ting expert testimony regarding investment fraud schemes; and (3) the trial court erroneously based an aggravated durational departure on the jury's finding of a fiduciary relationship.

We affirm Bryant's conviction, concluding his statutory right to a speedy trial was not violated, and the district court properly admitted expert testimony on investment fraud schemes. However, we reverse the trial court's imposition of an aggravated durational departure based upon the existence of a fiduciary relationship. We conclude that because a fiduciary relationship was necessarily inherent in the crime charged in this case, it could not be used as aggravating factor to support a durational departure.

### Statutory Right to a Speedy Trial

Prior to trial, Bryant requested two continuances. Both motions contained waivers of Bryant's speedy trial right. As a result of these continuances and a failed mediation attempt, the trial was set for March 28, 2005. That date was continued at the State's request to August 1, 2005. Just prior to trial, Bryant moved to dismiss the charges arguing his statutory right to a speedy trial was violated. The district court denied the motion, pointing out that the court had previously determined that the speedy trial clock began to run on March 28, 2005, and no party objected to that determination.

On appeal, Bryant renews his argument that his statutory right to a speedy trial was violated, claiming the speedy trial clock began to run on January 13, 2005, the date scheduled for a plea hearing.

Whether Bryant's statutory right to a speedy trial was violated is a question of law subject to de novo review. *State v. Adams*, 283 Kan. 365, 368, 153 P.3d 512 (2007). K.S.A. 22-3402(2) requires that a defendant be brought to trial within 180 days after arraignment unless the delay is due to the defendant's request, the defendant's fault, or a continuance ordered by the district court under subsection (5). The State had the burden to insure Bryant received a speedy trial in accordance with K.S.A. 22-3402. 283 Kan. at 369.

The parties agree that the time period following arraignment to January 13, 2005, is properly attributable to Bryant based upon his motions to continue the trial date and written waivers of his speedy trial right. However, the parties dispute whether the speedy trial

clock began to run on January 13, 2005, or March 28, 2005. If the clock began to run on January 13, 2005, then the trial date of August 1, 2005, was outside of the 180-day period mandated by K.S.A. 22-3402(2). Alternatively, if the clock began to run on March 28, 2005, then Bryant was tried within the 180-day period.

It is undisputed that Bryant requested a continuance of the trial set for December 6, 2004. However, some confusion resulted because the district court granted the motion to continue the trial on December 3, 2004, but did not reschedule the trial at that time. Instead, the court waited until January 13, 2005, the date scheduled for a plea hearing. On that date, because plea negotiations failed, the court rescheduled the trial for March 28, 2005.

When a continuance is sought by the defendant, the time from the granting of the continuance until the rescheduled trial date is attributable to the defendant. *State v. Lawrence*, 38 Kan. App. 2d 473, 477, 167 P.3d 794 (2007) (applying *State v. Brown*, 283 Kan. 658, Syl. ¶ 2, 157 P.3d 624 [2007]). Following this rule, the clock did not begin to run until March 28, 2005, the date to which the trial was eventually rescheduled pursuant to Bryant's request for a continuance.

Nevertheless, Bryant argues the clock began to run on January 13, 2005, the date set for a plea hearing. Bryant cites no authority in support of this assertion. Instead, he relies upon a statement made by the trial court at that hearing indicating the speedy trial clock began to run on that date. However, this appears to have been a misstatement by the trial court, since the continued trial date was requested by the defendant.

Moreover, the trial court appears to have recognized its misstatement on March 28, 2005, when the State requested a continuance of trial. At that time, the court rescheduled the trial until August 1, 2005, and clarified that "all the time from the preliminary hearing to today has been charged to the defense . . . so that our window of time to try the case essentially is beginning today." Bryant did not object to this statement.

Because the time period between January 13, 2005, and March 28, 2005, is properly attributable to the defendant, the August 1,

2005, trial date was within 180 days of March 28, 2005, and no statutory speedy trial violation occurred.

In light of our conclusion that Bryant's statutory speedy trial rights were not violated, we decline to consider the State's argument that the time period between March 28, 2005, to August 1, 2005, must also be attributed to the defendant.

*Admission of expert testimony*

At trial, the State presented the expert testimony of Leonard Zawistowski, Jr., regarding high-yield investment programs and the manner in which such programs generally operate. Zawistowski testified that Bryant's investment program was a high-yield investment fraud program. Bryant objected to Zawistowski's testimony on the grounds that it was improper and prejudicial.

The trial court overruled Bryant's objection, noting that Bryant was charged with "a business, practice or course of conduct that operates as a fraud or deceit" upon the victim. The court reasoned that Zawistowski's testimony that the investment in this case was a "bogus" investment "would support a claim by the State that Mr. Bryant should have known [the investment was fraudulent] as an experienced person in the investment industry." Further, the trial court held the testimony would support a claim that Bryant "intended to make materially untrue statements to [the victims] regarding the investment and to operate a course of business dealings" that would defraud the victims.

On appeal, Bryant argues Zawistowski's testimony was irrelevant and the district court abused its discretion in admitting the testimony.

" 'The admission of expert testimony lies within the sound discretion of the trial court. Its decision will not be overturned absent an abuse of discretion. One who asserts an abuse of discretion bears the burden of showing such abuse.' [Citation omitted.]" *State v. Brice*, 276 Kan. 758, 775, 80 P.3d 1113 (2003). Discretion is abused only when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said that the district

court abused its discretion. *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006).

We must first determine whether the evidence was relevant. "Because relevancy is a matter of logic and experience, the determination of relevancy is generally seen as inherently discretionary. [Citation omitted.]" *State v. Goodson*, 281 Kan. 913, 922, 135 P.3d 1116 (2006).

Zawistowski, a senior special investigator for the Federal Reserve Board, testified to the hallmark characteristics of high-yield investment fraud schemes. He further testified that documents given to the victims in this case, James and Cynthia Hester, contained many of these hallmarks, which he specifically identified. Based on his review of documents given to the victims, Zawistowski opined that the financial investment program in which Bryant invested the Hesters' funds was an illegitimate financial investment program.

We agree with the trial court that this information was relevant. A lay person generally does not have knowledge regarding the hallmarks of fraudulent investment schemes, and expert testimony regarding such schemes may be beneficial to a jury's understanding of the facts in a securities fraud case. Morever, in this case, the information was "within the scope of the special knowledge, skill, experience or training possessed by the witness." K.S.A. 60-456(b).

Nevertheless, Bryant argues Zawistowski's testimony was not relevant to prove Bryant committed securities fraud. Essentially, Bryant appears to argue the testimony was mere propensity evidence rather than evidence that would assist the jury in determining whether Bryant committed securities fraud.

Bryant was charged with committing securities fraud pursuant to sections (2) and (3) of K.S.A. 1998 Supp. 17-1253(a). That statute provides in relevant part:

"It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly, to . . . .

. . . .

(2) make any untrue statement of a material fact or to omit to state a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or

(3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person."

The jury also was instructed that the requisite act occurred in connection with the sale or purchase of a security.

In arguing it was error to admit Zawistowski's testimony, Bryant largely relies upon *State v. Clements*, 244 Kan. 411, 415, 770 P.2d 447 (1989), wherein the district court considered whether expert testimony regarding the psychology of sex offenders was properly admitted in a prosecution for aggravated criminal sodomy. *Clements* held that evidence "which only describes the characteristics of the typical offender has no relevance to whether the defendant committed the crime in question." 244 Kan. at 420.

*Clements* does not bar the expert testimony at issue here. Zawistowski's testimony was not limited to a description of the traits of a typical offender in a securities fraud case, or even to the characteristics of a typical high-yield investment securities fraud scheme. Rather, Zawistowski testified regarding the specific hallmarks or characteristics of the program used by Bryant that rendered the program fraudulent.

The State suggests Zawistowski's testimony is more analogous to the expert testimony given in *State v. McIntosh*, 274 Kan. 939, 958-60, 58 P.3d 716 (2002). There, the State's expert testified regarding common patterns of behavior detectable in sexually abused children and stated that he observed such behaviors during his interviews with the victim. However, the expert did not testify that he believed the victim was sexually abused.

Similarly, the district court properly admitted expert testimony here to show the specific fraudulent characteristics of the investment scheme utilized by Bryant and the manner in which such characteristics conformed to typical, high-yield, fraudulent investment schemes.

As the district court recognized, the jury was not required to find that the investment scheme was fraudulent in order to convict Bryant of securities fraud. Nevertheless, Zawistowski's testimony regarding the existence of a fraudulent scheme was relevant to whether Bryant made any material misstatements or omissions, or

engaged in an act, practice, or course of business that operated as a fraud upon the Hesters under K.S.A. 1998 Supp. 17-1253(a)(2) or (3).

The district court did not abuse its discretion in admitting the expert's testimony.

### Upward Departure

Based upon the jury's finding of a fiduciary relationship, the district court granted a 6-month upward durational departure in addition to Bryant's 18-month base sentence. Bryant appeals the departure.

Our review of a departure sentence is limited to determining whether the sentencing court's finding of fact and reasons justifying a departure (1) are supported by evidence in the record, and (2) constitute substantial and compelling reasons for a departure. K.S.A. 21-4721(d). Whether the facts relied upon by the sentencing court provide substantial and compelling reasons for a departure is a question of law over which we exercise unlimited review. *State v. Martin*, 285 Kan. 735, 739, 26 P.3d 58 (2008). The sentencing court must "state on the record at the time of sentencing the substantial and compelling reasons for the departure." K.S.A. 21-4716(a). The court's comments at the time of the sentencing govern as to the reasons for departure. *State v. Murphy*, 270 Kan. 804, 806, 19 P.3d 80 (2001), *rev'd on other grounds* 285 Kan. 735, 175 P.3d 832 (2008).

Bryant argues the existence of a fiduciary relationship did not provide a substantial and compelling reason for departure because a fiduciary relationship is inherent in, and typical to, the commission of the offense of securities fraud.

The State initially asserts Bryant's challenge to the departure was not properly preserved for appeal because Bryant failed to raise the issue in the district court. Generally, we will not consider for the first time on appeal an issue not presented to the district court. *State v. Smith*, 268 Kan. 222, 243, 993 P.2d 1213 (1999). However, we may consider a new issue if it involves only a question of law arising on proven facts and is finally determinative of the case. *State*

*v. Poulton*, 286 Kan. 1, 5, 179 P.3d 1145 (2008). That exception applies here.

As discussed, the jury was instructed that in order to convict Bryant of securities fraud pursuant to K.S.A. 1998 Supp. 17-1253(a)(2) or (3), it must find that Bryant, in connection with the sale of a security, made an untrue statement of a material fact; or failed to state a material fact necessary to prevent the statements from being misleading; or that he engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

The trial court defined "fiduciary relationship" as follows:

"In a fiduciary relationship, one person has placed special trust and confidence in the other. A fiduciary has the duty to act primarily for the benefit of the other person, who has placed his or her special confidence in the fiduciary. A fiduciary relationship implies a condition of superiority of one of the parties (the fiduciary) over the other. Generally, in a fiduciary relationship, the property, interest, or authority of the other person is placed in the charge of the fiduciary."

A factor is substantial if it is something real and with substance and compelling if it forces the court "to leave the status quo or go beyond what is ordinary." *State v. McKay*, 271 Kan. 725, 728, 26 P.2d 58 (2001); see *State v. French*, 26 Kan. App. 2d 24, 25-26, 977 P.2d 281 (1999).

In arguing the fiduciary relationship found by the jury in this case was not substantial as it was not "beyond the ordinary" in securities fraud cases, Bryant relies upon *State v. Cox*, 258 Kan. 557, 908 P.2d 603 (1995). There, the court explained that in enacting the sentencing guidelines, the legislature intended that upward departures be imposed only when the defendant was "substantially" more culpable than the "typical offender." An individual "somewhat" more or less culpable than a typical offender, however, should be sentenced at the top or bottom of the applicable guideline. 258 Kan. at 575.

The *Cox* court found that the sentencing court improperly relied upon the aggravated factor of an excessively brutal killing to enhance the defendant's sentence for aggravated robbery and conspiracy to commit robbery. The court reasoned:

"We read K.S.A.1993 Supp. 21-4716(b)(2)(B) to require conduct of a defendant 'in a manner not normally present in that offense,' *i.e.*, conduct going beyond what is minimally needed to satisfy the elements of the offense. Cox participated in the activities leading up to the killing, but the level of his participation did not go beyond what was needed to establish the elements for his convictions." 258 Kan. at 579.

Similarly, in *State v. Zuck*, 21 Kan. App. 2d 597, 904 P.2d 1005 (1995), the court noted that departures are appropriate only "in extraordinary cases" in order to give effect to the purpose of the sentencing guidelines to ensure uniformity in sentencing. 21 Kan. App. 2d at 604. In *Zuck*, the court found the sentencing court's upward departure was justified based on evidence the victim suffered emotional injuries in excess of that normally associated with the crime of attempted rape. Further, because evidence that defendant had molested the child victim over a period of years was not "covered" by the current charge for attempted rape, the court found the departure was supported by substantial and compelling reasons. 21 Kan. App. 2d at 604-06.

In contrast, in *State v. French*, 26 Kan. App. 2d 24, 26-27, 977 P.2d 281 (1999), this court reversed an upward departure finding a pattern of exploitative conduct based exclusively upon the inherent facts of the multiple crimes of conviction not being a substantial and compelling reason for a sentencing departure under K.S.A. 21-4716. The *French* court distinguished *Zuck*:

"The substantial and compelling reason to support the departure in *Zuck* was based upon previous uncharged but similar conduct of the defendant with the victim. In the case now on appeal, the district court's findings are limited to the inherent facts of each crime of conviction with the conclusion then drawn that the sum of the parts is greater than the whole." 26 Kan. App. 2d at 26.

As in *French*, the existence of a fiduciary relationship in a securities fraud case is generally inherent to the crime and certainly was not an "extraordinary" situation, as required in *Zuck*. And applying the rationale of *Cox*, we hold Bryant's fiduciary relationship with the victims in this case is a relationship typically present in a securities fraud case, and that relationship did not make Bryant's conduct substantially more culpable than that of a typical offender in such cases.

Nevertheless, the State contends that because a fiduciary relationship is not an element of the offense of securities fraud under K.S.A. 1998 Supp. 17-1253(a), it is theoretically possible to commit the crime without such a relationship. That it is theoretically possible to commit securities fraud absent a fiduciary relationship is not, however, determinative of whether such a relationship justifies an upward departure. Rather, when such a factor is normally or typically present in the commission of a securities fraud offense, as it is here, an upward departure is not justified.

The State also points to several factors that reportedly distinguish the fiduciary relationship between the defendant and the victims in this case from typical fiduciary relationships in securities fraud cases. However, none of these factors were relied upon by the district court in granting an upward departure in this case, nor were they proven to the jury beyond a reasonable doubt. Therefore we are precluded from considering these factors as justification for the district court's departure here. See *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); K.S.A. 21-4716(a)-(b).

Because the fiduciary relationship found by the jury was inherent to the offense of securities fraud in this case, we conclude the district court improperly aggravated Bryant's sentence based upon the existence of a fiduciary relationship. By our holding today, we do not suggest that the existence of a fiduciary relationship may never be an aggravating factor in a securities fraud case. We simply hold that under the facts of this case, the existence of a fiduciary relationship was not a substantial or compelling reason to grant an upward departure.

Based upon this finding, we need not consider Bryant's additional argument that K.S.A. 21-4716(c)(2)(D) permits consideration only of a preexisting fiduciary relationship in determining the existence of aggravated factors.

Affirmed in part, reversed in part, and remanded for resentencing.