No. 77,951

STATE OF KANSAS, *Appellee*, v. SHARON K. CARR, *Appellant*.

(963 P.2d 421)

Opinion filed July 10, 1998.

*Cheryl A. Pilate*, of Wyrsch, Hobbs, Mirakian & Lee, P.C., of Kansas City, Missouri, argued the cause, and *James R. Wyrsch*, of the same firm, was with her on the briefs for appellant.

*Doyle Baker*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Sharon K. Carr was found guilty of first-degree felony murder in the death of her adopted daughter, 3-year-old Shayleen Carr. She appeals, raising numerous issues involving questions of law, admissibility of evidence, jury instructions, and the sufficiency of evidence. We conclude that no reversible errors occurred in the trial of her case and affirm.

At approximately 4:40 p.m. on September 7, 1995, the defendant brought Shayleen to the South Minor Emergency Center in Wichita. Shayleen was unresponsive, with a dilated left pupil, labored breathing, and bruises on the ear, neck, and elbow. The defendant told a nurse at the center that Shayleen was jumping on the bed and fell to the carpeted floor. Shayleen was taken to the trauma room and then transported to Wesley Medical Center (Wesley).

The CT scan of Shayleen's head revealed bleeding over the surface of the brain and a swelling of the brain which caused the left side of the brain to compress into the right side. Shayleen's brain continued to swell, and she died from her injuries 4 days after admission to the hospital.

In an interview with police, the defendant first stated that Shayleen had rolled out of bed and fallen. The defendant told police that Shayleen never wanted to take her afternoon nap, and at times the defendant would have to hold Shayleen's arms on the bed until Shayleen fell asleep. She also stated that the defendant needed the nap time to herself so that she could have peace and quiet. Later, the defendant admitted that she spanked Shayleen before Shayleen fell off the bed. The defendant stated to the police that Shayleen's brother, Jared, obeys the rules but Shayleen does not and as a result the defendant gets frustrated and irritated.

After admitting to spanking Shayleen four or five times, the defendant also admitted to shaking Shayleen four or five times and putting her back on the bed. She stated that she was trying to shake Shayleen hard enough to get her attention, and that she did not

mean to spank Shayleen, but she just let her temper get out of control because Shayleen's conduct had been going on all week. The defendant stated that when she shook Shayleen, Shayleen's head bobbed back and forth.

A search of the defendant's residence uncovered a blood-stained tissue in the bathroom trash can and a small child's t-shirt, with bloodstains around the neck and shoulder area, on the washer. Investigators measured the distance between the top of Shayleen's bed and the carpeted floor and found it to be approximately 19 inches.

The State introduced testimony from various physicians as to the cause of Shayleen's death. Dr. Lindall Smith, a pediatric critical care physician at Wesley, testified that Shayleen had suffered a severe closed head injury and opined that a fall from a bed would not cause such a severe injury. He stated that comparable head injuries might be caused from being thrown headfirst through a car window or being ejected from a car in an accident.

Regarding the bruises on Shayleen, Dr. Smith testified that according to their color, they were of different ages. He noted that many of the bruises were in places which were not typical for bruises on toddlers. Dr. Smith stated that in his opinion, Shayleen's death was the result of shaken blunt trauma syndrome.

Dr. Marcus Nashelsky, a forensic pathologist who conducted the autopsy of Shayleen, testified that the girl had bruises on the back, including the left buttock, as well as bruises on both arms, thighs, and legs. Dr. Nashelsky also found bruises on the front and sides of the head, including a deep scalp bruise on the forehead, a large bruise on the back of the head near the top, and a bruise on the lower left back of the head, indicating multiple impacts. He further testified that Shayleen's brain was extremely swollen with bleeding in the space around the brain, indicating severe impact injuries to the head. The swelling of the brain reached the point that it had compressed the brain stem at the base of the brain.

Dr. Nashelsky also noted bleeding in the back of the eyes, which was particularly indicative of a shaking injury. He opined that Shayleen died of head injuries consisting of many blunt force injuries

and shaking injuries to the head and stated that his autopsy findings were absolutely inconsistent with a fall from a 19-inch high bed.

The defendant presented the testimony of her expert, Dr. Michael Arnall, an Associate Medical Examiner for West Palm Beach, Florida. Dr. Arnall testified that Shayleen's death might have been caused by a previous subdural hematoma which began bleeding again in response to slight trauma, coupled with a bleeding disorder. He stated that a 19-inch fall could cause a subdural hematoma to rebleed, and further that any one of Shayleen's injuries could be consistent with a 19-inch fall. However, both Dr. Nashelsky and Dr. Katherine Melhorn, a pediatrician called by the State, testified that there was no sign that a subdural hematoma had rebled or that Shayleen had suffered from a bleeding disorder prior to the injury.

In rebuttal, the State called Dr. Leonard Klafta, a neurosurgeon who stated that there was far too little blood in the region where Shayleen had suffered a previous subdural hematoma to account for the brain swelling. The State also called Dr. Michael Varenhorst, an ophthalmologist, who stated that almost always retinal hemorrhaging in children such as that suffered by Shayleen is accompanied by head trauma and that normal head injuries do not cause retinal hemorrhages; instead, it takes significant force to do so.

During trial, a question arose concerning the admission of evidence regarding the defendant's prior discipline of Shayleen and Jared. After a hearing outside the presence of the jury, the trial court determined that such testimony would be admissible to show a continuing course of action between the parties. Some of the defendant's friends and fellow church members then testified that the defendant was often harsh with the children and reacted violently and inappropriately to what those testifying perceived to be minor incidents of misbehavior. These witnesses characterized the defendant as a person who was frustrated over the misbehavior of the children and the lack of parenting support she received from her husband.

There was also a heated controversy over whether Jared would be allowed to testify, or whether statements which he made to

various persons after Shayleen's death could be admitted. After a thorough hearing on competency, the trial court decided that Jared was not competent to testify. However, the court found that certain statements Jared made would be admissible as exceptions to the rule against hearsay. As a result of this ruling, the State introduced statements made by Jared to Adella Ozor, a social worker with the Kansas Department of Social and Rehabilitation Services (SRS), and Jenny McCracken, a registered nurse in the pediatric intensive care unit at Wesley.

The defendant put on a variety of witnesses in her defense, including several former employees of SRS who testified regarding the steps taken to approve the defendant and her husband as foster and later adoptive parents of Shayleen and Jared. Once approved, the defendant and her husband became the foster parents of and eventually adopted Shayleen and Jared. The defendant's husband also testified as to the defendant's parenting skills and expressed his disbelief that the defendant could have hurt Shayleen.

The defendant contends that the following issues require reversal of her conviction and life sentence: (1) A single incident of child abuse is insufficient to serve as the underlying felony for a conviction of first-degree felony murder; (2) the trial court's instructions on abuse of a child were erroneous and violated the rule of jury unanimity; (3) Jared's statements were hearsay and were erroneously admitted; (4) the court erred in failing to allow other hearsay statements of Jared into evidence; (5) the jury should have been instructed on lesser included offenses; (6) the admission of autopsy photographs was prejudicial; (7) the admission of prior acts of the defendant towards her children was error; (8) there was cumulative error requiring a new trial; and (9) the evidence was insufficient to support the conviction.

## (1) FELONY MURDER—ABUSE OF A CHILD

The defendant contends that a single act of child abuse merges into the homicide and cannot be used as an underlying felony. The defendant also argues that intent to commit the act of hitting or hurting in the commission of child abuse is insufficient to transfer

the premeditation and intent required to establish first-degree felony murder.

Our recent decision in the case of *State v. Smallwood*, 264 Kan. 69, 955 P.2d 1209 (1998), disposes of the defendant's first contention. We held that the legislature intended that one instance of abuse of a child could indeed be the underlying felony for a felony-murder conviction. 264 Kan. at 94.

The defendant argues that the basis for the crime of first-degree felony murder is the theory that it relieves the State of the burden of proving the elements of premeditation and intent by transferring those elements from the underlying felony. According to the defendant, because abuse of a child is not a specific intent crime, it cannot supply the requisite premeditation and intent for a felony-murder conviction.

In *State v. Hupp*, 248 Kan. 644, 651, 809 P.2d 1207 (1991), this court stated: "In felony murder, premeditation and intent are transferred from the underlying felony . . . ." Also, in *State v. Clark*, 204 Kan. 38, 44, 460 P.2d 586 (1969), we stated that the rationale behind felony murder is that the killer's malignant purpose is established by proof of the collateral felony. We have also held that abuse of a child is not a specific intent crime in that the intent to injure is not required, but instead simply the intent to hit and hurt. *State v. Bruce*, 255 Kan. 388, 392-393, 874 P.2d 1165 (1994); *Hupp*, 248 Kan. at 652-53.

However, in arguing that abuse of a child is not a specific intent crime, the defendant ignores the fact that although it does not require some specific intent to injure, it does require a criminal intent—the intent to cruelly beat, intentionally torture, inflict cruel and inhuman corporal punishment on, or shake a child. See K.S.A. 21-3609. Thus, accidentally hitting a child is not abuse of a child. Moreover, while the felony-murder doctrine is based on the transfer of criminal intent, there is no requirement that it be based on the transfer of any specific intent beyond the general criminal intent in K.S.A. 21-3201 required for all crimes in Kansas.

In *State v. Thomas*, 239 Kan. 457, 461-62, 720 P.2d 1059 (1986), we gave what is perhaps the best explanation of the felony-murder rule:

"In felony-murder cases, the elements of malice, deliberation and premeditation which are required for murder in the first degree are deemed to be supplied by felonious conduct alone if a homicide results. To support a conviction for felony murder, all that is required is to prove that a felony was being committed, which felony was inherently dangerous to human life, and that the homicide which followed was a direct result of the commission of that felony."

It matters not whether abuse of a child requires a specific intent to injure. We have never required that an intent to injure be an element for the underlying felony in a felony-murder prosecution. All that is required is felonious conduct which is inherently dangerous to human life. Thus, the second part of the defendant's argument fails.

The defendant also suggests that K.S.A. 21-3609 is unconstitutionally vague. We held otherwise in *Hupp*, a fact which the defendant notes. See 248 Kan. at 656. The defendant, however, contends that an amendment to the statute in the time since our decision in *Hupp* requires us to revisit this issue.

The statute at issue in *Hupp* defined child abuse as "willfully torturing, cruelly beating or inflicting cruel and inhuman corporal punishment upon any child under the age of 18 years." K.S.A. 21-3609 (Ensley 1988). Hupp complained that the terms "cruelly beating" and "inflicting cruel and inhuman corporal punishment" were unconstitutionally vague. 248 Kan. at 655. We disagreed, stating that the phrase used provided reasonably definite standards which one reading the statute could understand and contemplate. 248 Kan. at 656.

Effective July 1, 1995, the legislature amended 21-3609 by inserting the words "shaking which results in great bodily harm." See L. 1995, ch. 251, § 12. The defendant claims that this change makes the statute vague because it is not modified by a particular mental state. The opposite is true. The 1995 amendment makes the statute more definite in that it makes clear that the conduct proscribed is the intentional torturing, cruelly beating, or shaking of a child *which results in great bodily harm*. The fact that there is no modifier with regard to the word shaking does not make the term ambiguous. A reasonable person could easily understand that the criminal conduct involved is shaking which results in great bodily

harm. Further, it is clear from the application of K.S.A. 21-3201 that the required mental state is that the shaking be intentional. We conclude that K.S.A. 21-3609 is not vague.

## (2) JURY INSTRUCTIONS

The defendant contends that the trial court erred in its instructions to the jury regarding the elements of the crime of abuse of a child. Further, the defendant contends that the instructions as given violated the rule of jury unanimity.

The defendant freely admits that she did not object to the instructions at the trial court level. Therefore, we may only reverse if the instruction given was clearly erroneous. See *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995). An instruction is clearly erroneous only if this court reaches a firm conviction that if the trial error had not occurred, there is a real possibility the jury would have returned a different verdict. *State v. Isley*, 262 Kan. 281, 291, 936 P.2d 275 (1997).

The jury instruction with which the defendant takes issue stated:

"The defendant is charged with the crime of murder in the first degree. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That the defendant killed Shayleen N. Carr;

2. That such killing was done in the commission of abuse of a child, a felony; and

3. That this act occurred on or about the 7th day of September, 1995, in Sedgwick County, Kansas.

"The elements of abuse of a child are as follows:

1. That the defendant intentionally cruelly beat, inflicted cruel and inhuman bodily punishment upon or shook Shayleen N. Carr, which resulted in great bodily harm to Shayleen N. Carr;

2. That Shayleen N. Carr was a child under the age of eighteen years; and

3. That this act occurred on or about the 7th day of September, 1995, in Sedgwick County, Kansas.

"*The words 'cruelly beat, inflicted cruel and inhuman bodily punishment upon or shook Shayleen N. Carr, which resulted in great bodily harm to Shayleen N. Carr' do not require an intent to injure. It is the act of hitting and hurting that is made a crime.*" (Emphasis added.)

This instruction is substantially the same as PIK Crim. 3d 58.11 except that the pattern instruction does not contain the italicized portion of the given instruction.

The defendant argues that the instruction fails to alert the jury as to the intent necessary with regard to shaking. She contends that the language of the instruction, including the last paragraph, "suggest that no particular intent is required beyond the intent to 'hit' or 'hurt.'" However, the instruction given informed the jury that to commit the crime of abuse of a child, the defendant must have cruelly beaten, inflicted cruel and inhuman bodily punishment upon, or have shaken Shayleen Carr in a manner which resulted in great bodily harm. Moreover, Instruction 6 stated in part:

"In order for the defendant to be guilty of murder in the first degree the State need not prove that the defendant intended to kill Shayleen N. Carr. However, the State must prove that her conduct in committing abuse of a child was intentional. Intentional means willful and purposeful and not accidental."

This instruction made clear that the beating, punishment, or shaking must have been intentional and not accidental.

We have held:

"When reviewing challenges to jury instructions, the instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous." *State v. Aikins*, 261 Kan. 346, Syl. ¶ 25, 932 P.2d 408 (1997).

The instructions as given, taken together, adequately informed the jury as to the elements of abuse of a child. The last paragraph added to the PIK instructions by the district court was probably unnecessary in that the PIK instruction was alone sufficient. Nevertheless, the added paragraph was a correct statement of the law. See *Hupp*, 248 Kan. at 653. The instructions as given were not clearly erroneous.

The defendant also contends that the instructions given failed to require jury unanimity in that some jury members may have found that the defendant intentionally cruelly beat Shayleen, other members might have found that she intentionally inflicted cruel and inhuman bodily punishment upon Shayleen, and still others might have found that she intentionally shook Shayleen.

The defendant's argument ignores the distinction we made in *State v. Timley*, 255 Kan. 286, 875 P.2d 242 (1994), between a multiple acts case and an alternative means case:

" 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.] In reviewing an alternative means case, the court must determine whether a rational trier of fact *could* have found each means of committing the crime proved beyond a reasonable doubt. [Citations omitted.]

" 'In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt. [Citations omitted.]' 110 Wash. 2d at 410. (Emphasis in original.)" 255 Kan. at 289-90.

The three methods outlined above by the defendant are alternative means by which child abuse may be committed. Where a single offense may be committed in more than one way, there must be jury unanimity as to the crime charged, but unanimity is not required as to the means by which the crime was committed so long as substantial evidence supports each alternative means. 255 Kan. 286, Syl. ¶ 1.

In this case, there was sufficient evidence for the jury to conclude that the defendant cruelly beat, inflicted cruel and inhuman bodily punishment on, and shook Shayleen. The defendant's argument that the rule of jury unanimity was violated by the court's instructions fails.

## (3) ADMISSIBILITY OF HEARSAY STATEMENTS OF JARED CARR PRESENTED BY THE STATE

Four-year-old Jared Carr made statements to Adella Ozor, an SRS investigator, and Jenny McCracken, a registered nurse in the pediatric intensive care unit of Wesley. The defendant contends that the trial court's admission of these statements was error.

Ozor interviewed Jared at his emergency foster home on September 8, 1995, at approximately 2 p.m. the day after Shayleen was injured. She described Jared as concerned, excitable, and fidgety. Ozor explained to Jared that she was there to find out what had happened. When she asked if he and Shayleen slept in different bedrooms, Jared stated that Shayleen takes bad naps but he takes good naps, and that "Mama bumps our heads all the time" and when asked how, stated, "Mama throws Shayleen down on the floor a lot." He then beat a doll on the floor several times, and when asked what Shayleen does he stated that she cries and that his mom slaps her across the face.

McCracken was the nurse caring for Shayleen. When Jared visited Shayleen on September 12, 1995, McCracken testified that Jared entered the room, approached Shayleen's bed, and touched her. He sat on Shayleen's bed, and someone explained to him that Shayleen was very sick and might not live. Jared nodded his head. He volunteered that children who die cannot play or run anymore. He then said, "[O]h, God, I'm sorry." McCracken offered to read Jared one of the books on Shayleen's bed. As she read the book, he took a stuffed doll with a sunflower face and threw the doll on the floor. He then stated, "Look, the doll's eyes did not roll back in its head." McCracken then asked Jared if Shayleen's eyes had rolled back in her head before she came to the hospital, and he indicated that they had. Later, he threw the doll to the floor again.

The State contends that the defendant failed to object at trial and therefore the issue of admissibility is not properly before us. The record supports this contention. A hearing outside the presence of the jury was held on whether Jared was competent to testify, and the court ruled that he was not. As a result, the court held a hearing at the request of the State as to whether certain hearsay statements could be admitted. After a thorough hearing, the court reserved ruling on the issue pending further consideration of the parties' arguments and authorities. Three days later, the court ruled that the hearsay testimony was admissible under K.S.A. 60-460(d)(2) and (3). On the second day after the court's ruling, the hearsay statements were introduced without the objection of the defendant.

At the time these statements were admitted at trial, no contemporaneous objection was made by the defendant. The defendant contends that her objection to the testimony was sufficiently noted, citing *State v. Bowman*, 252 Kan. 883, 887-88, 850 P.2d 236 (1993). In *Bowman*, we held that a defendant satisfied the contemporaneous objection rule when he objected prior to the testimony and the testimony was then admitted directly afterward. 252 Kan. at 888. However, the facts in this case are quite different. Here, a full 2 days of trial elapsed before the State attempted introduction of the statements. We have held that the failure to timely object at trial to alleged hearsay statements precludes the defendant from raising the issue on appeal. *State v. Stafford*, 255 Kan. 807, 810-11, 878 P.2d 820 (1995). Moreover, we have held that when an unfavorable ruling on an evidentiary question is received prior to trial, the party must make a timely objection to such evidence when it is introduced at trial in order to preserve the issue for appeal. *State v. Peckham*, 255 Kan. 310, 327, 875 P.2d 257 (1994).

While we acknowledge that the ruling on admissibility of the hearsay statements occurred during rather than prior to trial, a full 3 days elapsed between the ruling and the actual introduction of the evidence. Under the circumstances, in the absence of a contemporaneous objection, the question of admissibility of the hearsay statements was not preserved for review and may be deemed to have been waived by the defendant.

## (4) ADMISSIBILITY OF HEARSAY STATEMENTS OF JARED CARR PRESENTED BY THE DEFENDANT

The defendant also contends that the trial court erred in failing to admit the hearsay statement of Jared Carr concerning how Shayleen came to have black eyes. The defendant argues that this refusal constituted an abuse of discretion and further violated her constitutional right to due process.

The chain of events giving rise to the defendant's argument are important to the resolution of this issue. During the testimony of Victoria Sweetwater, a family support worker called as a witness by the defendant, Sweetwater testified that on one occasion she had observed Shayleen with two black eyes. The defendant later at-

tempted to ask Jim Carr about what Jared told him regarding Shayleen's black eyes. The State objected to Jared's statement on hearsay grounds. The defendant's attorney then stated, "I think it's res gestae, Your Honor." The trial court sustained the objection. However, Jim Carr was immediately thereafter allowed to testify that he found out that Shayleen had tripped on the new carpet and fallen, blackening both eyes.

The defendant now contends that the statements should have been admitted under K.S.A. 60-460(d)(2) or K.S.A. 60-460(d)(3). She may be correct in this assumption. However, whether or not she is correct that the statements were admissible, her argument fails that the failure to admit these statements requires reversal.

In this case, the statement at issue was one made by Jared, a witness who was unavailable. However, although the defendant asked that the statement be allowed, no reason was advanced for its admission. Further, the defendant did not proffer the contents of the statement, so it is very difficult to determine what effect the statement would have had on the outcome of the trial. In her reply brief, the defendant argues that such a proffer was unnecessary as the testimony immediately proceeding the attempted introduction of the hearsay statement made clear that the statement was that Shayleen got two black eyes in April when she tripped on the new carpet. If this is the case, then the issue is even easier. Immediately after the objection was sustained, the witness was asked, "Without telling us what Jared told you, did you find out what happened?" The witness was allowed to reply that he found out that Jared and Shayleen were running through the house and Shayleen had tripped on the new carpet and fallen headfirst. As a result, the substance of the hearsay statement was introduced to the jury and, therefore, any error in failing to introduce the exact statement itself was harmless.

Although the defendant contends that "the prejudice resulting from the exclusion was painfully obvious" in that if Jared's statement had been allowed in to corroborate the statement of Jim Carr, there is a substantial probability that the jury would have decided the case differently, this argument ignores the fact that whether Jared made the statement or Jim Carr simply related what he had

learned from Jared, the believability of the statement would still depend upon Jim Carr's credibility. Further, it is clear from the questions and answers that Jim Carr was relating an explanation that he learned from Jared, and the admission of Jared's actual statement was unnecessary. Under these circumstances, there was no prejudice to the defendant's right to a fair trial.

## (5) FAILURE TO INSTRUCT THE JURY ON LESSER DEGREES OF HOMICIDE

The evidence of the underlying felony in this case was strong. Dr. Lindall Smith testified that the severity of Shayleen's injury was comparable to that injury which would occur from being thrown headfirst through a car window or being thrown from a car in an accident. The defendant's theory was that she only spanked Shayleen and shook Shayleen but that she did not do either with sufficient force to cause the injury. Although the defendant contends on appeal that the evidence shows simply that this was a one-time occurrence where the defendant lost control, there is no evidence that the injuries inflicted on Shayleen were not the product of intentional battering or shaking.

Recently, in the case of *State v. Heath*, 264 Kan. 557, 572, 957 P.2d 449 (1998), we reaffirmed the rule in Kansas regarding this issue:

"The rule in Kansas with regard to felony murder is that the jury need not be instructed on lesser offenses unless evidence of the underlying felony is weak and inconclusive. *State v. Altum*, 262 Kan. 733, 738-39, 941 P.2d 1348 (1997). In *Altum*, the defendant was convicted of felony murder from an underlying count of abuse of a child in the beating death of a 14-month-old child. Altum contended that the jury should have been instructed on lesser included offenses. We noted that the only intent required for the offense of abuse of a child is the act of hitting or hurting; the type and nature of the injuries did not permit a reasonable conclusion that the injuries were accidentally inflicted and the only question was, therefore, who had abused the child. 262 Kan. at 737-38."

The record supports a conclusion that the evidence regarding the crime of child abuse was not weak, inconclusive, or conflicting. The defendant's claim fails.

## (6) AUTOPSY PHOTOGRAPHS

The defendant claims that the photographs were unnecessary, cumulative, repetitious, and gruesome, and served no purpose other than to inflame the passions and prejudices of the jury.

The admission of photographs in a homicide case is a matter within the trial court's discretion, and the court's ruling will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Reed*, 256 Kan. 547, 557, 886 P.2d 854 (1994). While photographs which are unduly repetitious, gruesome, and without probative value should not be admitted into evidence, demonstrative photographs are not inadmissible merely because they are gruesome and shocking where they are true reproductions of relevant physical facts and material conditions at issue. 256 Kan. at 557.

We have held that special care should be taken in admitting photographs taken after a pathologist has intervened in order that the evidence not be more gruesome than necessary. See *State v. Prouse*, 244 Kan. 292, Syl. ¶ 1, 767 P.2d 1308 (1989). In *State v. Boyd*, 216 Kan. 373, 377-78, 532 P.2d 1064 (1975), we held that trial court abused its discretion in admitting a photograph of the victim "laid out like a disemboweled beef in a packing plant," where such a photograph was repetitious and cause of death was not in dispute. However, it is well settled that photographs which serve to illustrate the nature or extent of the wounds inflicted are admissible when they corroborate the testimony of witnesses or are relevant to the testimony of a pathologist as to the cause of death. *State v. Spears*, 246 Kan. 283, 286, 788 P.2d 261 (1990).

The trial court was keenly aware of the balancing test at issue and admitted the photographs, which are admittedly gruesome, only after a thorough hearing at which the court required Dr. Nashelsky to explain why each photograph was necessary. Under the circumstances, we conclude that the trial court's decision to admit the photographs was not one with which no reasonable person would agree, and therefore the trial court did not abuse its discretion in so admitting the autopsy photographs.

## (7) PRIOR ACTS OF THE DEFENDANT TOWARDS SHAYLEEN CARR AND JARED CARR

The defendant next contends that the trial court erred in allowing evidence of the defendant's prior discipline of Jared and Shay-

leen. She argues that this evidence was improper evidence of prior bad acts and violated her right to due process.

K.S.A. 60-455 states:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The trial court admitted the evidence on the theory that it was admissible independent of K.S.A. 60-455 to show the relationship between the defendant and the victim. We have held that evidence of prior acts of a similar nature between the same parties is admissible independent of K.S.A. 60-455 where the evidence is not offered for the purpose of proving distinct offenses but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged. *State v. Jones*, 247 Kan. 537, 547, 802 P.2d 533 (1990); *State v. Crossman*, 229 Kan. 384, 387, 624 P.2d 461 (1981).

"The primary test for determining whether evidence is admissible independently of K.S.A. 60-455 is its relevancy to the issue in question. Relevancy is more a matter of logic and experience than of law. Evidence is relevant if it renders the desired inference more probable than it would be without the evidence or if it has any tendency in reason to prove any material fact." *State v. Sexton*, 256 Kan. 344, Syl. ¶ 1, 886 P.2d 811 (1994).

The admission of evidence independent of K.S.A. 60-455 is entrusted to the sound discretion of the trial court and will not be overturned absent a clear showing of abuse of that discretion. 256 Kan. 344, Syl. ¶ 2.

The defendant advances two reasons why the evidence is inadmissible. She contends that it is inadmissible because the evidence of prior disciplinary actions taken shows that those instances were not similar to the one which caused death. She argues that the prior instances consisted only of pinching or spanking. However, it is clear that the prior instances established the continuing course

of conduct between the parties with regard to discipline and that the defendant reacted angrily in situations of discipline with the children. As a result, the evidence was sufficiently similar to be relevant to establish the pattern or practice of the defendant with regard to discipline and that such discipline tended to be harsh or violent.

The defendant also contends that even if testimony of her disciplinary actions toward Shayleen was properly admitted, the court erred in allowing testimony of her disciplinary actions toward Jared. She argues that while we recognized in *Jones* that the continuing course of conduct between a defendant and victim might be relevant, Jared is a third party rather than the victim of the crime.

In *State v. McClanahan*, 254 Kan. 104, 118, 865 P.2d 1021 (1993), we noted in discussing evidence admissible independent of K.S.A. 60-455 that "[t]here may be cases involving a third-party victim where evidence of a discordant relationship would be relevant and therefore admissible," although we found the evidence in that case to be inadmissible. In *Sexton,* we held that it was a close question as to whether evidence of a defendant's sexual bondage activity with his former wife was admissible, mainly because the evidence was not relevant in that the defendant had already admitted bondage activity with the victim, a later girlfriend. 256 Kan. at 350-51.

In this case, evidence of the defendant's disciplinary actions toward Jared were highly relevant to show her pattern of discipline towards both the children. In each instance, her discipline of the children was the same and tended toward anger and harsh punishment for minor infractions. Her actions toward Jared were part and parcel of her relationship with Shayleen. As a result, the relevance of the evidence was much greater than the evidence of actions toward a third party in either *McClanahan* or *Sexton*. Under the circumstances, it cannot be said that the trial court abused its discretion in admitting the evidence.

## (8) CUMULATIVE ERROR

We have recognized that cumulative trial errors may be so great as to require reversal of a defendant's conviction. See *State v. Cas-*

*toreno*, 255 Kan. 401, 411, 874 P.2d 1173 (1994). The test is whether the totality of circumstances substantially prejudiced the defendant and denied him or her a fair trial. 255 Kan. at 411. However, based upon our resolution of each issue raised by the defendant in this case, we conclude there is no cumulative error.

## (9) SUFFICIENCY OF THE EVIDENCE

Where the sufficiency of the evidence is challenged in a criminal matter, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Claiborne*, 262 Kan. 416, Syl. ¶ 5, 940 P.2d 27 (1997).

The evidence, taken in a light most favorable to the State, showed that the defendant spanked and shook Shayleen, that she was the only person present when Shayleen was injured, that the injuries to Shayleen were consistent with physical abuse and could not have been sustained from a fall from bed as the defendant maintained, and that Shayleen died of those injuries. From this evidence, a rational factfinder could have found beyond a reasonable doubt that the defendant committed the crime of abuse of a child and as result of that crime, Shayleen died.

Affirmed.