**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SHARON CARR,

       Petitioner-Appellant,

v.

RICHARD KOERNER,

       Respondent-Appellee.

No. 03-3336

(D.C. No. 01-CV-3342-SAC)
(D. Kansas)

## ORDER AND JUDGMENT[*]

Before **BRISCOE, MURPHY**, Circuit Judges, and **STEWART**, District Judge.[**]

## I. INTRODUCTION

Petitioner Sharon Carr appeals the district court's denial of her Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. We granted a Certificate of Appealability on two grounds, namely (1) whether alleged error in the introduction of hearsay violated the Confrontation Clause of the Sixth Amendment, and (2) whether

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Ted Stewart, District Judge, District of Utah, sitting by designation.

alleged ineffective assistance of counsel violated Petitioner's Sixth and Fourteenth Amendment rights. We now affirm the district court's decision.

## II. PROCEDURAL HISTORY

On September 27, 1996, Petitioner was convicted by a jury in the district court of Sedgwick County, Kansas, of first-degree felony murder in the death of her adopted three-year-old daughter, Shayleen. Petitioner was sentenced to life in prison and subsequently sought, but was denied, appeal at several levels. First, Petitioner sought rehearing with the state trial court, which was denied on July 10, 1998. Second, Petitioner filed a direct appeal to the Kansas Supreme Court where her conviction was affirmed on July 10, 1998. Third, Petitioner sought post-conviction relief with the state trial court, which denied her petition on November 17, 2000. The trial court further denied Petitioner's Request for Rehearing. Fourth, Petitioner sought appellate review of the denial of her petition for post-conviction relief with the Court of Appeals for the State of Kansas, which affirmed the state trial court's denial on February 23, 2001. Motion for Rehearing was denied, as well as subsequent review by the Kansas Supreme Court. Fifth, Petitioner filed a Writ of Habeas Corpus under 28 U.S.C. § 2254 with the United States District Court for the District of Kansas, which denied the petition on October 15, 2003. We granted appeal.

## III. BACKGROUND

The predicate felony underlying Petitioner's conviction is based on an incident of child abuse. The incident occurred on September 7, 1995, when Shayleen was hospitalized for various serious injuries. Shayleen died from the injuries four days after admission to the hospital. Petitioner's four-year-old son, Jared Carr, was present in the home at the time Shayleen was injured and was able to observe Petitioner and Shayleen.

On the second day of trial, the trial court held a hearing outside the presence of the jury to determine whether or not Jared was competent to testify before the jury. Jared was questioned in the courtroom by the attorneys and the judge, and the trial court heard arguments of counsel. The trial court then ruled that Jared was *not* qualified to testify because he was unable to comprehend the concept of taking an oath, and was "incapable of expressing himself on the matter so as to be understood" by the judge and the jury. The trial judge noted that many of Jared's answers were "nonresponsive." However, the judge emphasized he had not found that Jared was untruthful or that Jared didn't know the difference between a truth and a lie. The finding was that Jared was incompetent to testify, which rendered him "unavailable as a witness."

In light of this finding by the trial judge, the State requested that two other witnesses – social worker Adella Ozor, and Jenny McCracken, a registered nurse at the pediatric intensive care unit at the hospital – be allowed to testify as to statements Jared made outside the courtroom. These statements implicated Petitioner as the cause of

Shayleen's injuries. The statements were allowed by the trial court—after Confrontation Clause analysis—under the excited utterance and recent perception hearsay exceptions.[1] Defendant's counsel did not object contemporaneously to the introduction of this evidence.

The trial judge found that he had "no difficulty" finding that Jared was "unavailable," as defined in Kan. Stat. Ann. § 60-459(g), that his statements were made at a time when the matter had been recently perceived by him and his recollection was clear, and that the statements were made in good faith prior to the commencement of the action and with no incentive to falsify or distort. The trial court went on to say that its determination did not end with this statutory analysis, but also required a constitutional analysis because the unavailable witness rule was "not considered a firmly-rooted exception to the hearsay rule," and allowing hearsay would deny Petitioner her right to confrontation under the Kansas and United States constitutions. The trial court engaged in an analysis of the factors contained in *Idaho v. Wright*, 497 U.S. 805 (1990), and concluded that the testimony was admissible. The testimony was allowed at trial, and a conviction was ultimately obtained.

As part of its affirmation of the trial court's ruling, the Kansas Supreme Court held that under the doctrine of procedural default, this failure by Petitioner's trial counsel to

---

[1]      Kan. Stat. Ann. § 60-460(d)(2), (3).

object contemporaneously foreclosed any subsequent claim that the court improperly allowed hearsay evidence at trial.

Petitioner sought several issues on appeal, but only two were granted review by this Court: (1) whether admission of Petitioner's unavailable minor child's hearsay statements violated the Confrontation Clause of the Sixth Amendment, and (2) whether Petitioner's trial counsel was ineffective through failing to object to hearsay to such a degree that Petitioner's Sixth and Fourteenth Amendment rights were violated.

## IV. STANDARD OF REVIEW

The district court's denial of Carr's petition for habeas relief is reviewed *de novo* with respect to legal conclusions and under a clear error standard for factual findings. *Rogers v. Gibson*, 173 F.3d 1278, 1282 (10th Cir. 1999).

On review of habeas corpus determinations, the ruling below must be left undisturbed unless an independent review of the record and pertinent federal law leads to the conclusion that the ruling "contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Aycox v. Lytel*, 196 F.3d 1174, 1178 (10th Cir. 1999). Even if the federal habeas court concludes in its independent review that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if the application is also *objectively unreasonable*. *Williams v. Taylor*, 529 U.S. 362 (2000). The court is not to re-weigh the evidence or substitute its judgment for the judgment of

-5-

the court below, and is bound by a state court's interpretation of its own law.  *Estelle v.*

*McGuire*, 502 U.S. 62, 67-68 (1991).  We proceed under this standard of review.


## V.  DISCUSSION

### A.  The Procedural Default Doctrine

The procedural default doctrine precludes federal habeas review of a federal claim

that a state court has declined to consider due to the Petitioner's noncompliance with state

procedural rules *unless* Petitioner can show: (1) both cause and prejudice, and (2)

manifest injustice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Further, in order for the bar to preclude consideration of a federal claim on habeas

review, the state procedural rule must be:  (1) independent, and (2) adequate.  The rule is

independent if the last state court that rendered a judgment in the case clearly and

expressly stated that its decision rested upon a procedural bar.  *Church v. Sullivan*, 942

F.2d 1501, 1506 (10th Cir. 1991) (relying upon *Harris v. Reed*, 489 U.S. 255 (1989)).

The rule is adequate if it is "strictly or regularly followed."  *Johnson v. Mississippi*, 486

U.S. 578, 587 (1988).  This rule has been routinely followed in Kansas state courts.  *See*

Kan. Stat. Ann. § 60-404.  Here, the Kansas Supreme Court expressly declined to

consider the merits of this issue due to counsel's failure to contemporaneously object.

Therefore, it is clear that the rule is both independent and adequate in this case.

-6-

Petitioner concedes that because the Kansas Supreme Court held that Petitioner procedurally defaulted her claim regarding Jared's hearsay statements, the Petitioner faces procedural default in this forum, unless she is able to show cause excusing the default, as set forth in *Coleman*.

Petitioner argues that her trial counsel's failure to contemporaneously object amounts to ineffective assistance of counsel and that ineffective assistance satisfies the *Coleman* test above. "Ineffective assistance of counsel . . . is cause for [reviewing] a procedural default" of a state court procedure in federal habeas proceedings. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Therefore, if the court finds that ineffective assistance of counsel occurred, the procedural bar is lifted, and the court may reach the merits regarding the admission of Jared's hearsay statements. However, counsel error that does not rise to the degree of ineffective assistance of counsel, may not amount to cause to relieve a procedural default. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a [review of] procedural default." *Id.* at 486.

Aside from Petitioner's claim of ineffective assistance of her trial counsel, Plaintiff has not raised grounds establishing that the *Coleman* factors are met in this case, especially in light of the significant and persuasive evidence presented at trial, when viewed in its totality. We, therefore, turn to Petitioner's claim of ineffective assistance of counsel as it relates to satisfaction of the otherwise-applicable procedural bar in this case.

-7-

**B.  Ineffective Assistance of Counsel**

Petitioner argues that she received ineffective assistance of trial counsel in violation of her Sixth and Fourteenth Amendment rights.  This contention is based on the fact that trial counsel failed to preserve the issue of admissibility of Jared's hearsay statements by failing to lodge a contemporaneous objection to the admission of those statements at trial.

To demonstrate ineffectiveness of counsel, Petitioner must generally show:  (1) that counsel's performance fell below an objective standard of reasonableness (*i.e.* deficient), and (2) that counsel's deficient performance was prejudicial.  *Strickland v. Washington*, 466 U.S. 668, 687, 690) (1984), *cited by United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996).  In order to meet the first element, there must be "a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  Petitioner must show that her counsel's conduct did not fall within the range of competence demanded of an attorney in a criminal case.  *Id.* at 689; *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996).  However, courts are to review such claims with a strong initial presumption that counsel conduct falls within this acceptable range, thereby eliminating the "distorting effects of hindsight."  *Strickland*, 466 U.S. at 688-89; *Carr*, 80 F.3d at 417.  With regard to the second element, Petitioner must show that counsel's errors were "so serious as to deprive [her] of a fair [proceeding in which the] result is reliable."  *Strickland*, 466 U.S.

at 687. The element is satisfied when there is a "reasonable probability that, but for the alleged errors, the results of the proceedings would have been different." *Id.* at 695.

Petitioner's argument that counsel rendered ineffective assistance through failure to preserve the hearsay argument through contemporaneous objection does not rise to a violation of the Sixth Amendment in this instance. Petitioner has failed to show that the introduction of the statements were so prejudicial as to change the outcome of the trial. Petitioner has not met the second prong of the *Strickland* analysis. Because Petitioner fails to show ineffective assistance of counsel, Petitioner also fails to show counsel's actions rose to such a level of error so as to remove the procedural bar.

Having held that the procedural bar applies to this case, the Court will not further consider Petitioner's remaining claim regarding hearsay.

## VI. CONCLUSION

For the reasons set forth above, we affirm the district court's decision and find that Petitioner's Sixth and Fourteenth Amendment rights were not violated by her counsel's failure to contemporaneously object to the admission of her son's statements.

For the foregoing reasons, the district court's denial of Petitioner's § 2255 habeas petition is **AFFIRMED**.

Entered for the Court


Ted Stewart
District Judge

No. 03-3336, Carr v. Koerner

**BRISCOE**, Circuit Judge, concurring.

In my view, Carr is not procedurally barred from challenging the admission of

Jared's out-of-court statements. However, I conclude the admission of those statements,

even if improper, was harmless. I therefore agree with the majority that the district court

properly denied Carr's habeas petition.

I.

Carr contends the trial court violated her rights under the Fifth, Sixth, and

Fourteenth Amendments when it admitted into evidence out-of-court statements made by

Jared to Adella Ozor, a state-employed social worker/investigator, and Jenny McCracken,

a registered nurse who worked in the pediatric intensive care unit where Shayleen stayed

immediately prior to her death. Carr first raised this issue on direct appeal. The Kansas

Supreme Court, in addressing the issue, began by outlining the precise nature of the

challenged statements:

> Ozor interviewed Jared at his emergency foster home on September 8,
> 1995, at approximately 2 p.m. the day after Shayleen was injured. She
> described Jared as concerned, excitable, and fidgety. Ozor explained to
> Jared that she was there to find out what had happened. When she asked if
> he and Shayleen slept in different bedrooms, Jared stated that Shayleen takes
> bad naps but he takes good naps, and that "Mama bumps our heads all the
> time" and when asked how, stated, "Mama throws Shayleen down on the
> floor a lot." He then beat a doll on the floor several times, and when asked
> what Shayleen does he stated that she cries and that his mom slaps her across
> the face.
>
> McCracken was the nurse caring for Shayleen. When Jared visited
> Shayleen on September 12, 1995, McCracken testified that Jared entered the
> room, approached Shayleen's bed, and touched her. He sat on Shayleen's

bed, and someone explained to him that Shayleen was very sick and might not live. Jared nodded his head. He volunteered that children who die cannot play or run anymore. He then said, "[O]h, God, I'm sorry." McCracken offered to read Jared one of the books on Shayleen's bed. As she read the book, he took a stuffed doll with a sunflower face and threw the doll on the floor. He then stated, "Look, the doll's eyes did not roll back in its head." McCracken then asked Jared if Shayleen's eyes had rolled back in her head before she came to the hospital, and he indicated that they had. Later, he threw the doll to the floor again.

State v. Carr, 963 P.2d 421, 430 (Kan. 1998).

The Kansas Supreme Court ultimately concluded the issue was not adequately preserved for appellate review:

> The State contends that the defendant failed to object at trial and therefore the issue of admissibility is not properly before us. The record supports this contention. A hearing outside the presence of the jury was held on whether Jared was competent to testify, and the court ruled that he was not. As a result, the court held a hearing at the request of the State as to whether certain hearsay statements could be admitted. After a thorough hearing, the court reserved ruling on the issue pending further consideration of the parties' arguments and authorities. Three days later, the court ruled that the hearsay testimony was admissible under K.S.A. 60-460(d)(2) and (3). On the second day after the court's ruling, the hearsay statements were introduced without the objection of the defendant.
>
> At the time these statements were admitted at trial, no contemporaneous objection was made by the defendant. The defendant contends that her objection to the testimony was sufficiently noted, citing State v. Bowman, 252 Kan. 883, 887-88, 850 P.2d 236 (1993). In Bowman, we held that a defendant satisfied the contemporaneous objection rule when he objected prior to the testimony and the testimony was then admitted directly afterward. 252 Kan. at 888, 850 P.2d 236. However, the facts in this case are quite different. Here, a full 2 days of trial elapsed before the State attempted introduction of the statements. We have held that the failure to timely object at trial to alleged hearsay statements precludes the defendant from raising the issue on appeal. State v. Stafford, 255 Kan. 807, 810-11, 878 P.2d 820 (1994). Moreover, we have held that when an unfavorable

-2-

ruling on an evidentiary question is received prior to trial, the party must make a timely objection to such evidence when it is introduced at trial in order to preserve the issue for appeal. State v. Peckham, 255 Kan. 310, 327, 875 P.2d 257 (1994).

> While we acknowledge that the ruling on admissibility of the hearsay statements occurred during rather than prior to trial, a full 3 days elapsed between the ruling and the actual introduction of the evidence. Under the circumstances, in the absence of a contemporaneous objection, the question of admissibility of the hearsay statements was not preserved for review and may be deemed to have been waived by the defendant.

Carr, 963 P.2d at 430-31.

In light of the Kansas Supreme Court's ruling, respondent contends the issue is procedurally barred for purposes of federal habeas review. We will not review a state habeas petitioner's claims if they were defaulted in state court on independent and adequate state procedural grounds, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice. Smith v. Mullin, 379 F.3d 919, 925 (10th Cir. 2004). Here, the rule cited by the Kansas Supreme Court in Carr was clearly independent, because it was based exclusively on Kansas state law (i.e., the Kansas Supreme Court's own decisions concerning when an objection must be asserted to the admission of evidence in order to preserve the issue for purposes of appeal). See Smith, 379 F.3d at 925 ("Independent state procedural grounds are those that rely exclusively on state law as a basis of decision."). The more troublesome question is whether the rule was "adequate." Under Tenth Circuit case law, a state procedural rule is considered

-3-

"adequate" if it is "consistently and evenhandedly . . . applie[d]" by the state courts at issue. Id.; State v. Mays, 85 P.3d 1208, 1225 (Kan. 2004) (applying same rule).

At the time of Carr's trial, it was well established, both by statute and by rulings from the Kansas Supreme Court, that a specific and timely objection to the admission of evidence was necessary to preserve the issue for appeal. E.g., Kan. Stat. Ann. § 60-404 ("A verdict . . . shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."). With regard to the timeliness requirement, the general rule appeared to be that a defendant had to assert an objection at trial in order to preserve an issue for appeal. For example, in State v. Peckham, 875 P.2d 257, 270 (1994), the Kansas Supreme Court held that "[w]hen an unfavorable ruling on an evidentiary question prior to trial is received, a party must make a timely objection to such evidence when introduced at trial in order to preserve the issue for appeal." Thus, even though the defendant in Peckham filed a motion in limine objecting to the admission of certain evidence and received an unfavorable pretrial ruling on that motion, the Kansas Supreme Court held that he subsequently waived the issue for purposes of appeal by failing "to make a contemporaneous objection during trial as the evidence objected to was introduced." Id. (emphasis added); see also State v. Johnson, 899 P.2d 1050 (Kan. 1995) (concluding that admission of defendant's confession was not reviewable on appeal where defense failed to renew objection during trial); State v. Alford, 896 P.2d 1059 (Kan. 1995)

-4-

(holding that admissibility of written statement not properly before the court on appeal where defense asserted a pretrial objection, but failed to object during trial); State v. Johnson, 874 P.2d 623 (Kan. 1994) (holding that failure to object to evidence at trial did not preserve issue denied in earlier motion in limine).

What was unclear under Kansas law, however, was precisely how close in time to the admission of the evidence at trial the objection had to be made. Stated differently, it was unclear whether an objection asserted at some point during trial was sufficient to preserve the issue, or whether, instead, an objection had to be made at or very near the time the evidence at issue was actually admitted. Here, the prosecution proposed introducing Jared's out-of-court statements on the second day of trial (9/18/96). At that time, Carr's trial counsel vigorously opposed the admission of those statements. The trial court subsequently conducted a hearing on the issue on the fourth day of trial (9/20/96), out of the presence of the jury. Carr's trial counsel again vigorously opposed admission of the out-of-court statements. On the fifth day of trial (9/23/96), the trial court ruled on the issue, concluding the out-of-court statements were admissible under Kansas law and were sufficiently reliable for constitutional purposes. Two days later, the seventh day of trial (9/25/96), the prosecution actually introduced Jared's out-of-court statements. Carr's trial counsel asserted no objection at that time. Presumably, Carr's trial counsel concluded, based upon existing Kansas law, that it was unnecessary to again object to the evidence,

since he had already voiced specific objections thereto and the issue had been conclusively ruled on by the trial court.

In Carr, the Kansas Supreme Court effectively adopted a new requirement for preserving an objection to the admission of evidence: not only must a defendant assert his or her objections at trial, he or she must do so at the precise time the objected-to evidence is introduced. In other words, the Kansas Supreme Court held that it was not enough, as was the case here, for a defendant to assert specific objections to evidence at some other point during trial and receive a conclusive ruling on the objections from the trial court. Instead, the Court held, under such circumstances a defendant must reassert his or her objections at the time the evidence is actually introduced, even if doing so amounts to a perfunctory act. Notably, in adopting this position, the Kansas Supreme Court cited to no prior Kansas decisions in which a similar rule had been applied.

In light of the fact that the rule applied by the Kansas Supreme Court in Carr had never previously been announced or applied, I conclude the rule cannot be considered a "firmly established and regularly followed state practice" for purposes of the procedural bar issue in these federal habeas proceedings. James v. Kentucky, 466 U.S. 341, 348 (1984); see Messer v. Roberts, 74 F.3d 1009, 1016 (10th Cir. 1996) (concluding that procedural rule applied by Kansas Supreme Court, requiring a defendant who unsuccessfully moved to suppress evidence prior to trial to reassert his or her objection at trial, "was not so firmly established and regularly followed to constitute a bar" for

purposes of federal habeas review).  In turn, I conclude that Carr is not procedurally barred in these federal habeas proceedings from challenging the admission of Jared's out-of-court statements.

## II.

I now turn to Carr's objection to the admission of Jared's out-of-court statements, applying a de novo standard of review.  See Turrentine v. Mullin, 390 F.3d 1181, 1189 (10th Cir. 2004) (outlining the standard of review "where the state court has not previously heard a habeas claim on the merits").  Carr's central objection to the admission of the statements is that her rights under the Sixth Amendment's Confrontation Clause were violated.  At the time of Carr's trial and her direct appeal, Ohio v. Roberts, 448 U.S. 56 (1980), was the primary Supreme Court case regarding "the relationship between the Confrontation Clause and the hearsay rule . . . ."  Id. at 62.  In Roberts, the Supreme Court held that "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable."  Id. at 66.  "Even then," the Court noted, "his statement is admissible only if it bears adequate 'indicia of reliability.'"  Id.  According to the Court, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception."  Id.  "In other cases," the Court held, "the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."  Id.

The trial court in Carr's case correctly determined that <u>Roberts</u> provided the controlling framework for its analysis of whether Jared's out-of-court statements were constitutionally admissible. In applying <u>Roberts</u>, the trial court first concluded that Jared was "unavailable" to testify because, in the trial court's view, he was incapable of expressing himself concerning the matters at issue or understanding the duty of a witness to tell the truth. App., Vol. V at 4. Second, the trial court concluded that Jared's out-of-court statements were admissible under Kansas law, i.e., Kan. Stat. Ann. § 60-460(d)(3) (providing that an out-of-court statement is admissible if "the judge finds [it] was made . . . by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort"). Because, however, the trial court concluded that the exception relied upon under Kansas law was "not a firmly-rooted hearsay exception" for purposes of <u>Roberts</u>, <u>id.</u> at 5-6, it proceeded to analyze whether Jared's out-of-court statements contained adequate indicia of reliability and particularized guarantees of trustworthiness. <u>Id.</u> at 6-7. In doing so, the trial court stated:

> The Court notes that the statements occurred one day and five days after Shayleen's injury, or at least the final injury that sent her to the hospital. The Court notes that the language and vocabulary attributed to Jared is appropriate for that of a four-year-old child. The Court notes that the statements made by Jared were made about his mother, whom you would expect Jared would have had a good relationship with. The Court notes that Jared's statements are corroborated by evidence in this case in that we know Jared was in the house at the time of the injury, and perhaps even in the same

-8-

bedroom. The Court notes that the statements about Shayleen's injuries are certainly corroborated by all of the physical evidence we have in this case as to Shayleen's injuries. The Court notes that there is really no evidence of anyone influencing Jared to distort the event, especially in the short time between the event and the statements. * * * The Court notes consistent repetition with Jared's statements. * * * As to spontaneous nature, I'd like to break down the two statements in particular. First of all, the statements made to Adella Ozor on September 8th. It can't be said that that statement is spontaneous. It was the result of an interview. But, the Court notes that the questions certainly weren't leading, and the Court also notes that [Jared] volunteered a lot of information and expanded over what was asked of him. * * * So, in summary, although those remarks were made as a result of an interview, the Court finds that the questions were not leading, and a lot of [Jared's] responses were volunteered and expanded upon the specific question that was asked of him. Turning to the statement in the hospital room on September 12th, the Court notes that that statement is somewhat spontaneous. The evidence indicated that Jared was just in the hospital and, suddenly, he threw a doll down on the floor and said something like "Look, the doll's eyes don't roll back like Shayleen's did." No one had even been talking about anything like that when Jared did that. * * * In the final analysis, the Court needs to make a judgment on trustworthiness, to determine if any hearsay evidence should be admitted, regardless of what the exception might be. For all the reasons I've stated, the Court finds that the two particular statements we're talking about contain adequate indicia of reliability and particularized guarantees of trustworthiness . . . .

Id. at 7-11. Based upon these findings, the trial court concluded that the out-of-court statements were admissible under Roberts. Id. at 11.

In addressing Carr's appeal of the denial of his § 60-1507 motion, the Kansas Court of Appeals concluded, after reviewing the record, that it was "clear that the [trial] court's action in admitting these [out-of-court] statements was not arbitrary, fanciful, or unreasonable, but was made after careful consideration of the issue." Id., Vol. XIII at 203. In reaching this conclusion, however, it is obvious that the Kansas Court of Appeals was

only applying the abuse of discretion standard applicable under Kansas law when a defendant challenges the admission of evidence under Kansas state law.  E.g.,State v. Jenkins, 39 P.3d 47, 56 (Kan. 2002) ("The admission of evidence lies within the sound discretion of the trial court.").  Importantly, there is no indication that the Kansas Court of Appeals actually addressed, or intended to address, Carr's Sixth Amendment challenge to admission of the out-of-court statements.

Addressing that issue de novo, I conclude there was at least one significant flaw in the trial court's analysis of whether the out-of-court statements were reliable.  As the trial court's statements on the record indicate, it placed heavy reliance on the fact that the out-of-court statements were corroborated by (1) "evidence in this case in that we know Jared was in the house at the time of the injury, and perhaps even in the same bedroom," and (2) "all of the physical evidence we have in this case as to Shayleen's injuries."  App., Vol. V at 7-8.  The problem with this reliance on corroborating evidence is that it is contrary to the decision in Idaho v. Wright, 497 U.S. 805 (1990).  In Wright, the Supreme Court held that corroborating evidence cannot be used to support the reliability of a hearsay statement for purposes of the Roberts analysis.  Id. at 822.  More specifically, the Court emphasized that, "[t]o be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial."  Id.  Thus, one of the substantial bases relied upon

-10-

by the trial court in concluding that the out-of-court statements at issue were reliable was improper.[1]

Assuming, then, that the admission of Jared's out-of-court statements was contrary to <u>Roberts</u> and thus violated Carr's rights under the Confrontation Clause, the question is whether the resulting error entitles Carr to federal habeas relief. "[T]he appropriate harmless error standard to be applied on habeas review is from" <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). <u>Webber v. Scott</u>, 390 F.3d 1169, 1177 (10th Cir. 2004). Under <u>Brecht</u>, federal habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 623.

Applying that standard here, I conclude the admission of Jared's out-of-court statements was, indeed, harmless. The prosecution's case-in-chief against Carr lasted for approximately six days and included approximately sixteen witnesses. One witness, a long-time friend of Carr, testified that Carr was a strict disciplinarian with Shayleen and Jared, and on one occasion stated that "to get the kids' attention she had to hurt them." App., Vol. II at 156. Three fact witnesses, a nurse who worked at the minor emergency center where Carr first took Shayleen and two emergency medical workers who transported Shayleen from there to the hospital, testified that they observed bruises on

---

[1] Taking away the trial court's reliance on corroborating evidence leaves only (a) the relative spontaneity of the statements, (b) the fact that they occurred relatively close in time to the injuries sustained by Shayleen, and (c) the fact that the language and vocabulary used by Jared appeared consistent with that generally used by a four-year-old child.

Shayleen's ears, neck, elbow, and lower right leg, as well as blood in the corner of Shayleen's mouth. Id., Vol. X at 6, 31, 40. Two of these same witnesses testified that Carr was very quiet and unemotional, and did not ask any questions about what was happening to Shayleen, all of which, in their experiences, was atypical. Id. at 7, 32. Two different fact witnesses, a detective with the Wichita Police Department and a social worker and investigator with the Kansas Department of Social and Rehabilitation Services, testified that they separately interviewed Carr after Shayleen was admitted to the hospital. During both interviews, Carr admitted (after first indicating that Shayleen had merely rolled off her bed onto the floor) to having spanked and shaken Shayleen out of frustration that Shayleen had refused to take a nap. Id., Vol. II at 80-82, 94, 100–02. Three physicians, two of whom saw Shayleen after she was admitted to the hospital and prior to her death, and one whom performed the autopsy on her following her death, testified about her injuries. All three agreed that Shayleen was the victim of "shaken impact" or "shaken baby blunt trauma" syndrome, in which a child is shaken against a fixed surface such as a floor or wall. Id., Vol. III at 69, 92, 150, 168. Their opinions were based on the constellation of symptoms exhibited by Shayleen and the results of medical testing and autopsy (with particular emphasis placed upon the fact that Shayleen exhibited significant retinal and subdural hemorrhaging).

In her defense, Carr presented seven witnesses. Four of these witnesses were state employees who were involved with the Carrs' adoption of Jared and Shayleen. None of

-12-

these witnesses had any knowledge about the events in question; instead, they simply testified to what they observed at the Carr household in the general time period prior to Shayleen's death. One of the witnesses was Carr's husband (now ex-husband), who testified that Carr was a nurturing and caring mother who, in his experience, had never been violent with their children. Carr also called Shayleen's pediatrician as a defense witness. He testified that, during his visits with Shayleen, he observed no pattern of abuse. Finally, Carr presented testimony from the associate medical examiner of Palm Beach County, Florida. He disagreed with the prosecution's expert witnesses that Shayleen was a victim of shaken impact syndrome. App., Vol. VI at 71-75. Instead, he opined that Shayleen died from a "remote subdural hematoma," i.e., a subdural hematoma that had occurred sometime previously in Shayleen's life, and that had "re-bled," perhaps as a result of Shayleen falling out of bed. Id. at 12, 31, 96.

In rebuttal, the prosecution presented testimony from two additional doctors who consulted on Shayleen's case after her admission to the hospital. The first doctor testified, in contrast to the defense expert, that Shayleen had not suffered from any subdural hematomas. Id., Vol. VIII at 107. He further testified that there were far more bruises on Shayleen's body than would be expected from a normal, active child. Id. at 104. The second doctor, an ophthalmologist specializing in retinal diseases, testified that retinal hemorrhaging, such as that observed in Shayleen, "almost always" occurs as a result of head trauma. Id. at 116-17. Finally, the prosecution presented testimony from a

-13-

paramedic that none of the bruises on Shayleen's body occurred as a result of the paramedics' handling of her prior to her admission to the hospital (this was in response to a suggestion by Carr's husband that the paramedics were rough with Shayleen). Id. at 132-33.

During deliberations, the jury asked to have the testimony of three witnesses reread to them. All three of these witnesses (Carr's husband, a nurse who was on duty at the time Shayleen arrived at the minor emergency center, and a paramedic who helped transport Shayleen from the minor emergency center to the hospital) testified regarding the extent of bruising that was apparent on Shayleen's body at the time she initially arrived at the minor emergency center. Thus, in arriving at its verdict, it appears that a central focus of the jury was whether Shayleen had, in fact, been physically abused by Carr prior to her arrival at the minor emergency center.

Although Jared's out-of-court statements certainly lent support to the prosecution's theory that Shayleen's injuries occurred as a result of abuse by Carr, I am not persuaded they were a pivotal piece of evidence in the case. Rather, the statements merely helped to verify what the prosecution's evidence (particularly the physical evidence of Shayleen's injuries and the opinions of the prosecution's physicians) otherwise strongly suggested, i.e., that Carr not only spanked and shook Shayleen, but also at some point struck her head against a hard object (verified by Jared to be the floor of their house). In the end, given the weight of the evidence against Carr, much of which corroborated Jared's out-of-court

-14-

statements, I conclude the admission of the statements did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623.

III.

I also conclude there is no merit to Carr's ineffective assistance of counsel claim. Because the "contemporaneous objection" rule announced by the Kansas Supreme Court in Carr was not firmly established and regularly followed at the time of Carr's trial, Carr's trial counsel cannot be faulted for failing to restate his objections to the out-of-court statements at the precise time they were admitted, since he had already specifically voiced those objections during trial and the trial court, after hearing evidence and argument, had conclusively ruled on the issue. See generally Strickland v. Washington, 466 U.S. 668, 687 (1984) (discussing first prong of the test for ineffective assistance of counsel). Nor, for the reasons outlined above, can Carr establish prejudice arising out of her counsel's failure to object to the out-of-court statements at the precise time they were admitted. See id. at 694 (discussing second prong of test).